NOTICE: All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports. If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

SJC-11562

JOHN DOE, SEX OFFENDER REGISTRY BOARD NO. 68549 <u>vs</u>. SEX
OFFENDER REGISTRY BOARD.


Suffolk.      September 3, 2014. - November 5, 2014.

Present:  Gants, C.J., Spina, Cordy, Botsford, Duffly, Lenk, &
Hines, JJ.



<u>Sex Offender</u>.  <u>Sex Offender Registration and Community
Notification Act</u>.  <u>Administrative Law</u>, Substantial
evidence, Regulations.  <u>Evidence</u>, Sex offender, Expert
opinion.  <u>Practice, Civil</u>, Sex offender.  <u>Witness</u>, Expert.
<u>Regulation</u>.  <u>Minor</u>.




<u>Civil action</u> commenced in the Superior Court Department on
June 15, 2010.

The case was heard by <u>Robert C. Cosgrove</u>, J., on a motion
for judgment on the pleadings.

The Supreme Judicial Court granted an application for
direct appellate review.


<u>Francis J. DiMento</u> (<u>Dana Alan Curhan</u> with him) for the
plaintiff.
<u>Jennifer K. Zalnasky</u> for the defendant.
<u>Eric Tennen</u>, for Youth Advocacy Division of the Committee
for Public Counsel Services & others, amici curiae, submitted a
brief.

Robert E. McDonnell, Jeff Goldman, Nathaniel P. Bruhn, & Saia M. Smith, for American Civil Liberties Union Foundation of Massachusetts & another, amici curiae, submitted a brief.

LENK, J.  Over a three-year period ending in 1988, when he was sixteen years old, John Doe No. 68549 repeatedly subjected two of his cousins to sexual assaults, including rape.  His victims came forward many years after the fact and, in October, 2003, when Doe was thirty-one years old, he pleaded guilty to a number of sex offenses committed when he was a juvenile.

In March, 2006, a hearing examiner of the Sex Offender Registry Board (SORB) determined that Doe posed a moderate risk of reoffense and a moderate degree of dangerousness, and classified Doe as a level two sex offender.  A Superior Court judge, determining that this classification was not supported by substantial evidence, remanded for further proceedings.  In May, 2010, a successor hearing examiner (successor examiner) concluded that Doe poses a low risk of reoffense and a low degree of dangerousness.  Doe was therefore classified as a level one sex offender, a classification that was upheld by a different judge of the Superior Court.  Doe appealed, and we granted his application for direct appellate review.

Doe contends that he should not be required to register as a sex offender.  See G. L. c. 6, § 178K (2) (a)-(d).  He argues that, in light of scientific research showing that adolescent

brains are different from adult brains, and in light of the long period of time that has elapsed since his last offense, the successor examiner's decision was not supported by substantial evidence. Doe contends also that the regulations enacted and applied by SORB are outmoded, in that they predate recent studies concerning adolescent brains and adolescent behavior.

We conclude that, although Doe presented considerable information suggesting that he is no longer dangerous, the successor examiner took this information into account and reached a decision that was supported by substantial evidence in determining that Doe should be classified as a level one sex offender. We therefore conclude that there was no error in the successor examiner's classification of Doe as a level one sex offender, and affirm the Superior Court judge's decision upholding the successor examiner's classification determination. We emphasize, however, as we have done previously, that it is incumbent upon SORB to update its guidelines at reasonable intervals in order to take proper account of current scientific knowledge.[1]

---

[1] We acknowledge the amicus briefs submitted by the Youth Advocacy Division of Committee for Public Counsel Services, the Children's Law Center of Massachusetts, and Citizens for Juvenile Justice; and by the American Civil Liberties Union Foundation of Massachusetts and Citizens for Juvenile Justice in support of John Doe.

1. Statutory framework. In prior cases, we described in detail the tapestry of statutes and regulations that governs the registration requirement imposed on sex offenders. See, e.g., Doe, Sex Offender Registry Bd. No. 205614 v. Sex Offender Registry Bd., 466 Mass. 594, 595-597 (2013) (Doe No. 205614); Doe, Sex Offender Registry Bd. No. 151564 v. Sex Offender Registry Bd., 456 Mass. 612, 614-615 (2010) (Doe No. 151564); Doe, Sex Offender Registry Bd. No. 3844 v. Sex Offender Registry Bd., 447 Mass. 768, 768-772 (2006) (Doe No. 3844). Here we reprise the essential elements of that scheme.

An individual is a "sex offender" if he or she has been convicted of one or more statutorily enumerated offenses. G. L. c. 6, § 178C. Sex offenders are classified into levels of dangerousness, increasing in severity from level one to level three. Each level is attended by different implications. Although SORB transmits information about all sex offenders to specific authorities, information about level one offenders is not available to the general public. G. L. c. 6, § 178K (2) (a). Information about level two and level three offenders is entered into a publicly accessible Internet database. G. L. c. 6, § 178D. See Moe v. Sex Offender Registry Bd., 467 Mass. 598, 600-606, 616 (2014) (declaring unconstitutional the retroactive application of this provision to individuals classified as level two sex offenders on or

before July 12, 2013).  In addition, SORB and local police departments "actively disseminate" information about level three offenders to individuals and organizations who are likely to encounter those offenders.  G. L. c. 6, § 178K (2) (c).

SORB is required to consider a list of statutory factors in making its classification determinations.  See G. L. c. 6, § 178K (1) (a)-(l).  This list is not exhaustive, however, and SORB also must take into account any other information that is "useful in assessing the risk of reoffense and the degree of dangerousness posed to the public by the sex offender," including information of this kind introduced by the offender. G. L. c. 6, § 178L (1).  See Doe, Sex Offender Registry Bd. No. 10216 v. Sex Offender Registry Bd., 447 Mass. 779, 787 (2006) (Doe No. 10216), citing Doe, Sex Offender Registry Bd. No. 1211 v. Sex Offender Registry Bd., 447 Mass. 750, 762 n.9 (2006) (Doe No. 1211); 803 Code Mass. Regs. § 1.38(2) (2013).

As mandated by statute, SORB has promulgated "guidelines for determining the level of risk of reoffense and the degree of dangerousness posed to the public or for relief from the obligation to register."  See G. L. c. 6, § 178K (1).  These guidelines describe the manner in which SORB is to apply twenty-four factors increasing or decreasing risk, which are derived from the factors enumerated in the statute.  See 803 Code Mass. Regs. § 1.40 (2013) (guidelines).  The guidelines require SORB

to be guided by the "definitions, explanations, principles, and authorities" contained in the guidelines. See id. We have read the term "authorities" to encompass studies conducted by researchers whose work is cited in the guidelines. See Doe No. 205614, 466 Mass. at 604; Doe No. 151564, 456 Mass. at 622.

"The registration and classification process is, essentially, a two stage process." 803 Code Mass. Regs. § 1.38(3) (2013). First, SORB makes an initial "recommendation" concerning an offender's classification level. Id. See G. L. c. 6, § 178L (1) (a). The offender may then object to SORB's recommendation, in which case he or she "is provided an individualized hearing . . . at which all relevant evidence is evaluated anew by a disinterested Hearing Examiner." 803 Code Mass. Regs. § 1.38(4) (2013). See Doe No. 3844, 447 Mass. at 772; G. L. c. 6, § 178L (1), (2). At this hearing, SORB bears the burden of demonstrating by a preponderance of the evidence that the offender has a duty to register, and what the offender's classification should be. 803 Code Mass. Regs. § 1.10(1) (2013).

SORB "may . . . relieve [a] sex offender of any further obligation to register" if the offender establishes that "the circumstances of the offense in conjunction with the offender's criminal history do not indicate a risk of reoffense or a danger to the public." G. L. c. § 178K (2) (d). The decision as to

whether this provision should be applied must take into account "factors, including but not limited to, the presence or absence of any physical harm caused by the offense and whether the offense involved consensual conduct between adults." Id.

We have emphasized that the sex offender registration requirement "implicates constitutionally protected liberty and privacy interests." See Doe No. 205614, 466 Mass. at 596, citing Doe v. Attorney Gen., 426 Mass. 136, 144 (1997). Accordingly, "careful and individualized due process is necessary to sort sexual predators likely to repeat their crimes from large numbers of offenders who pose no danger to the public." Doe No. 205614, supra, citing Doe, Sex Offender Registry Bd. No. 972 v. Sex Offender Registry Bd., 428 Mass. 90, 105 (1998) (Marshall, J., concurring in part and dissenting in part).

2. Facts. We recite the facts found by the successor examiner. These facts were relied upon by the Superior Court judge, and Doe does not dispute them.

Doe's cousins, a boy and a girl, emigrated from Ireland to the United States with their family. The cousins' family was, at first, dependent on Doe's family. During the years from 1986 through 1988, Doe, then a teenager, engaged in repeated sexual assaults against his male cousin and in one sexual assault against his female cousin. At the end of this period, Doe and

the female cousin were sixteen years old. The male cousin was two years younger.

Doe's assaults against the male cousin, which began when the cousin was eleven years old, escalated in violence over time, from masturbation to digital and then penile rape. Doe's assault against his female cousin occurred when they were both sixteen years old. On that occasion, the female cousin was swimming in Doe's family's swimming pool, when Doe swam over and raped her digitally.[2]

Doe's cousins first disclosed the sexual assaults in 2000, twelve years after the assaults had ceased. The cousins explained that they had been afraid to complain earlier because of their parents' dependency on Doe's family, and because Doe had threatened that he would cause their family to be deported if they complained. Doe initially told police that he had engaged only in consensual acts with his male cousin. In October, 2003, however, he pleaded guilty to five counts of rape of a child, G. L. c. 265, § 22A; five counts of rape and abuse of a child, G. L. c. 265, § 23; and two counts of rape, G. L. c. 265, § 22 (b).

---

[2] As discussed infra, evidence of a sexual assault by Doe on another female victim was excluded by the successor hearing examiner in the more recent Sex Offender Registry Board (SORB) proceedings. In addition, the successor examiner made no findings concerning other sexual assaults reported to police by Doe's female cousin.

3.  Classification proceedings.  On March 1, 2005, SORB notified Doe that it was recommending that he be classified as a level two sex offender.  Doe objected to this classification, and his matter was considered de novo by a SORB hearing examiner (original examiner).  The original examiner held a hearing and heard testimony from two experts proffered by Doe, Dr. Bernard Katz and Dr. Barbara K. Schwartz.  He also received from Doe an expert report of Dr. Joseph J. Plaud.  On March 17, 2006, the original examiner ordered, as SORB had recommended, that Doe register as a level two offender.

Doe sought judicial review in the Superior Court.  A Superior Court judge determined that the original examiner's classification decision was not supported by substantial evidence.  He therefore entered judgment on the pleadings in Doe's favor, and remanded the matter to SORB.

On remand, two additional hearings were conducted by the successor examiner.  The successor examiner took additional evidence, including an updated report and oral testimony from Schwartz, one of Doe's expert witnesses.  The successor examiner made new, independent rulings and factual findings.  Among other things, he excluded from the record a police report, which the original examiner had considered, describing a complaint against Doe by another woman, unrelated to Doe.

The successor examiner noted that Doe had been "a juvenile" and "an adolescent" when he committed his offenses. The examiner accepted the opinion of another of Doe's experts, Katz, that at the time of the offenses, Doe was "an unhappy, overweight and maladjusted teenager." In his decision, the successor examiner also considered as risk reducing the facts that Doe had not committed his offenses against strangers; had not reoffended since 1988; had enjoyed success in high school, in college, and in his work at a car dealership; was in a romantic relationship with an age-appropriate woman; had not abused alcohol in recent years; and had participated successfully in sex offender treatment. The successor examiner noted also that the experts proffered by Doe opined that the risk he presented was "extremely low" or none. In view of these facts, the successor examiner determined that Doe "has made substantial progress towards 'no risk' status."

On the other hand, the successor examiner found that Doe's sex offenses, which included "high contact" acts that had escalated "over a three-year period," had been "repetitive and compulsive." The successor examiner determined that there had been "a disparity between [Doe] and his [v]ictims as regards age, size, strength, economic status, and citizenship"; that Doe had been "controlling" and "hostile"; and that Doe had "victimized his male cousin in an escalating, repetitive and

predatory pattern." In addition, the successor examiner noted that when, as a twenty-eight year old, Doe was confronted by his aunt about his actions, he "wondered . . . how many times he needed to apologize" and then "told his aunt, 'I never liked you or your family. You're weak and you're stupid. As a matter of fact, that made it all the more enjoyable.'" The successor examiner concluded that Doe presents "cognizable low risk of reoffense and a low degree of dangerousness," and ordered Doe to register as a level one sex offender.

Doe again sought judicial review. This time, a different Superior Court judge affirmed the classification determination, stating that "[a]lthough . . . if considering the matter de novo, [the judge] might place more weight on the factors emphasized by Doe," the successor examiner's decision nevertheless was supported by substantial evidence.

4. Standard of review. SORB's final classification of a sex offender is subject to judicial review under G. L. c. 30A, § 14. See G. L. c. 6, § 178M.[3] This review is "confined to the record, except that in cases of alleged irregularities in

---

[3] Our inquiry on appeal is similar to the inquiry conducted by a Superior Court judge in an action for judicial review of SORB's decision. See Doe, Sex Offender Registry Bd. No. 205614 v. Sex Offender Registry Bd., 466 Mass. 594, 601-602 (2013); Doe, Sex Offender Registry Bd. No. 151564 v. Sex Offender Registry Bd., 456 Mass. 612, 614-615 (2010).

procedure before the agency, not shown in the record, testimony thereon may be taken in the court."  G. L. c. 30A, § 14 (5).

A reviewing court will not disturb SORB's decision unless that decision was (a) in violation of constitutional provisions; (b) in excess of SORB's authority; (c) based upon an error of law; (d) made upon unlawful procedure; (e) unsupported by substantial evidence; (f) unwarranted by facts found by the court, where the court is constitutionally required to make independent findings of fact; or (g) arbitrary or capricious, an abuse of discretion, or otherwise not in accordance with law.  G. L. c. 30A, § 14 (7).  See Doe No. 151564, 456 Mass. at 614-615.  The court must "give due weight to [SORB's] experience, technical competence, and specialized knowledge . . . as well as to the discretionary authority conferred upon it."  G. L. c. 30A, § 14 (7).  In addition, SORB's guidelines "must be accorded all the deference due to a statute."  Doe No. 205614, 466 Mass. at 602, quoting Massachusetts Fed'n of Teachers, AFT, AFL-CIO v. Board of Educ., 436 Mass. 763, 771 (2002).

5.  Analysis.  a.  Substantial evidence of Doe's dangerousness.  Doe's primary argument is that the successor examiner's decision to classify him as a level one sex offender was not supported by substantial evidence, particularly since "the offenses he committed occurred while he was a juvenile more

than twenty years ago." In the circumstances, this argument is unavailing.

A decision of a SORB hearing examiner will not be upheld if it is "[u]nsupported by substantial evidence." G. L. c. 30A, § 14 (7) (e). See Doe No. 10216, 447 Mass. at 787, citing Flint v. Commissioner of Pub. Welfare, 412 Mass. 416, 420 (1992). "Substantial evidence" is "such evidence as a reasonable mind might accept as adequate to support a conclusion." G. L. c. 30A, § 1 (6). A decision does not satisfy the "substantial evidence" requirement if "the evidence points to no felt or appreciable probability of the conclusion or points to an overwhelming probability of the contrary." Cobble v. Commissioner of Dep't of Social Servs., 430 Mass. 385, 390-391, (1999), quoting New Boston Garden Corp. v. Assessors of Boston, 383 Mass. 456, 466 (1981). Any evidence may be considered and relied upon by the examiner "if it is the kind of evidence on which reasonable persons are accustomed to rely in the conduct of serious affairs." G. L. c. 30A, § 11 (2).

A classification decision should not be based solely on the fact that an offender's underlying crime was sexual in nature. See Doe, Sex Offender Registry Bd. No. 24341 v. Sex Offender Registry Bd., 74 Mass. App. Ct. 383, 387 (2009), citing Doe, Sex Offender Registry Bd. No. 8725 v. Sex Offender Registry Bd., 450 Mass. 780, 787, 790 (2008) (Doe No. 8725). A hearing examiner

has discretion, however, to consider which statutory and regulatory factors are applicable and how much weight to ascribe to each factor, and, as stated, a reviewing court is required to "give due weight to [the examiner's] experience, technical competence, and specialized knowledge." G. L. c. 30A, § 14 (7). See Doe, Sex Offender Registry Bd. No. 10800 v. Sex Offender Registry Bd., 459 Mass. 603, 633 (2011) (Doe No. 10800), citing Smith v. Sex Offender Registry Bd., 65 Mass. App. Ct. 803, 812-813 (2006). Accordingly, "[o]ur review does not turn on whether, faced with the same set of facts, we would have drawn the same conclusion as an agency or local board, but only 'whether a contrary conclusion is not merely a possible but a necessary inference.'" Goldberg v. Board of Health of Granby, 444 Mass. 627, 638 (2005), quoting Commissioner of Revenue v. Houghton Mifflin Co., 423 Mass. 42, 43 (1996).

As noted, the successor examiner took account of various factors that tended to alleviate the concern that Doe will reoffend. He considered, among other things, Doe's age at the time of the offenses; the fact that Doe knew his victims; Doe's subsequent educational, professional, and personal successes; and his completion of sex offender treatment. The successor examiner also considered, as required by the guidelines, "the length of time [that Doe] has had access to the community without committing any new offenses," see 803 Code Mass.

Regs. § 1.40(9)(a), finding that, "since 1988, [Doe] has not reoffended." Cf. Doe No. 8725, 450 Mass. at 790.

Nonetheless, the successor examiner's ruling was supported by evidence concerning multiple factors that did tend to indicate Doe's dangerousness. Much of this evidence is set forth above, including the repetitive, protracted, escalating, and "high contact" nature of Doe's offenses. These are factors that, according to the guidelines, the successor examiner was required to consider. The guidelines state that offenders who "manifest their compulsive behavior by engaging in a continuing course of sexual misconduct involving separate incidents . . . present[] a greater risk to reoffend and . . . pos[e] an increased degree of dangerousness." 803 Code Mass. Regs. § 1.40(2). See G. L. c. 6, § 178K (1) (a) (ii). "[T]he level of physical contact between the offender and the victim during the sex offense is another important element to be considered in understanding the nature of the offense and in determining a level of dangerousness." 803 Code Mass. Regs. § 1.40(9)(c)(7). Finally, "SORB also considers the length or duration of the sex offending behavior as important and useful information in determining dangerousness." 803 Code Mass. Regs. § 1.40(9)(c)(8). See G. L. c. 6, § 178K (1) (b) (iii) (mandating consideration of "the number, date and nature of prior offenses").

The successor examiner also noted the following facts as indications, under the guidelines, of an increased risk of reoffense and degree of dangerousness:  that Doe offended against both a male victim and a female victim, see 803 Code Mass. Regs. § 1.40(9)(c)(2), (9)(c)(11); that his victims were children, see 803 Code Mass. Regs. § 1.40(9)(c)(12); that he engaged in a variety of different offending behaviors, see 803 Code Mass. Regs. § 1.40(9)(c)(10); that he has, in the past, had difficulties with substance abuse, see 803 Code Mass. Regs. § 1.40(16) and G. L. c. 6, § 178K (1) (g); and that, as evidenced by his remarks to his aunt twelve years after the offenses, Doe's acceptance of responsibility has been less than complete.  See 803 Code Mass. Regs. § 1.40(9)(c)(13).

In sum, in the context of the record as a whole, the successor examiner's ruling was based on evidence that "a reasonable mind might accept as adequate to support a conclusion" that Doe poses a low risk of reoffense and a low degree of dangerousness.  G. L. c. 30A, § 1 (6).  Cf. Doe No. 10800, 459 Mass. at 637.

b.  Other issues concerning Doe's classification.  We have noted previously that, in some cases, a SORB hearing examiner "might greatly benefit from testimony or a report by an appropriately trained and qualified mental health professional." Doe, Sex Offender Registry Bd. No. 89230 v. Sex Offender

Registry Bd., 452 Mass. 764, 776 (2008). See Doe No. 151564, 456 Mass. at 623-624. Expert testimony is likely to be particularly valuable where a substantial period of time "has elapsed since the guidelines were last revised," and where significant, relevant research has been conducted in the intervening period. See Doe No. 205614, 466 Mass. at 609.

In this case, the hearing examiner heard evidence concerning Doe's degree of dangerousness from three experts. One of these experts, Schwartz, presented an updated report and updated testimony on remand. The successor examiner considered this evidence and, in large part, found it cogent. For instance, he was persuaded by Katz's opinion that "the sex offenses were causally related to the fact that during the offending era, [Doe] was an overweight, teased and maladjusted adolescent."[4]

Ultimately, the successor examiner did not adopt the position advocated by Doe's experts, namely that Doe's risk of

---

[4] The successor examiner concluded, however, that Doe's difficulties as an adolescent were not "the exclusive cause of the offending behavior." In support of this conclusion, the successor examiner noted that Doe "not only sexually offended while a younger adolescent at [thirteen] but continued to do so when he was just four months shy of [seventeen]; did so in an escalating rather than diminishing fashion as regards level of contact; graduated from [a Catholic high school] as reflects some measure of positive adjustment, self control and social adaptation in that environment; and [had a] relationship with his parents [that] appears by the record to not have been unusual or extreme."

reoffense and his degree of dangerousness were less than "low." The successor examiner's decision on this score was not erroneous.  SORB is "not statutorily required to present expert testimony in support of its position before the examiner," Doe No. 10216, 447 Mass. at 786, and "[t]he opinion of a witness testifying on behalf of a sex offender need not be accepted by the hearing examiner even where the board does not present any contrary expert testimony."  Doe No. 10800, 459 Mass. at 637, citing Doe No. 1211, 447 Mass. at 764.  The successor examiner's reasons for reaching a conclusion not shared by Doe's experts were, as described above, supported by the evidence before him.

We have held also that a SORB classification decision will be deemed "[a]rbitrary or capricious," G. L. c. 30A, § 14 (7) (g), if it fails to take into account reliable evidence that a factor relevant to a given offender affects the likelihood that the offender will recidivate.  For instance, Doe No. 151564 involved an offender who was sixty-one years old at the time of the hearing and where "[t]here was substantial evidence presented at the hearing concerning the effect of age on recidivism."  456 Mass. at 622.  The SORB hearing examiner declined to take this evidence into account, reasoning that "age is not considered as a factor in [the guidelines]."  Id.  We concluded that the examiner's decision was arbitrary and capricious, noting that the studies submitted by the offender in

that case were "written by many of the same authorities on whom the board relies in its [guidelines]."  Id.  Similarly, in Doe No. 205614, the offender, a woman, presented "current, validated evidence demonstrating the relevance of gender in assessing the risk of reoffense."  466 Mass. at 607.  Two hearing examiners disregarded this evidence, and we held their decisions, too, to be arbitrary and capricious. Id. at 608.

Doe argues that the successor examiner in his case also ignored, in essence, a scientifically relevant factor, namely, that Doe was an adolescent when he committed his offenses.  Doe cites recent scientific studies that, he asserts, establish that teenagers are more limited than adults in the soundness of their judgment in complex situations, in their capacity to control impulses, and in their ability to plan effectively.  These limitations are due, in part, to organic differences between adult brains and adolescent brains.

Although the studies now cited by Doe were referred to briefly, and in general terms, in Schwartz's April, 2009, report, these studies were not relied upon or offered into evidence before SORB.  Because our review is "confined to the record," the successor examiner's failure to address evidence that was not presented to him would not be grounds for disturbing his decision.  G. L. c. 30A, § 14 (5).  See Doe No.

205614, 466 Mass. at 608 n.11, citing Commonwealth v. Vega, 449 Mass. 227, 234 (2007).

Nonetheless, it would not have been proper for the successor examiner to disregard the fact that Doe was a youth when he offended, because the applicable statute and the guidelines require that this fact be considered. General Laws c. 6, § 178K (1) (e), provides that one of the "[f]actors relevant to the risk of reoffense" is "whether the sex offender was a juvenile when he committed the offense." The guidelines, in turn, cite research pointing to "numerous differences between [juvenile offenders] and their adult counterparts." 803 Code Mass. Regs. § 1.40(14). Accordingly, the guidelines specify whether each of the factors enumerated in them applies in whole, in part, or not at all to a "[j]uvenile [o]ffender," namely "any sex offender who was younger than [seventeen] years old at the time he [or she] committed all of his or her sex offenses." 803 Code Mass. Regs. § 1.39(4) (2013). See, e.g., 803 Code Mass. Regs. § 1.40(1) ("[m]ental [a]bnormality" factor does not apply to juvenile offenders); 1.40(6) (same for maximum term of incarceration); 1.40(9)(c)(6) (same for convictions of nonsexual violent offenses); 1.40(3) ("[c]hild [v]ictim" factor applies differently to adults and to juveniles); 1.40(7) (same for relationship between offender and victim).

As noted, the successor examiner took into consideration Doe's young age at the time of his offenses.  Implicitly, he did so by applying only those factors that, according to the guidelines, appropriately are considered with regard to juvenile offenders.  The successor examiner also specifically applied the factor concerning an offender's relationship with his victim(s) in the manner that the guidelines deem appropriate for juvenile offenders.  See 803 Code Mass. Regs. § 1.40(7).  More explicitly, the successor examiner made repeated references to the fact that Doe was an "adolescent" and a "juvenile" at the time of his offenses, and rested one of his evidentiary rulings on his "appreciation of the fact that [Doe] was a juvenile at the time he committed the sex offenses."  We do not conclude, therefore, that the successor examiner failed to take into account the mandatory consideration that Doe committed his offenses at a young age.[5]

c.  Validity of the guidelines.  Doe asserts that the factors and presumptions incorporated in the guidelines are "out of date," in that they were developed prior to recent studies concerning the differences between adolescents and adults.[6]  In

_____

[5] As explained, the successor examiner also did not ignore the fact that many years had passed since Doe last offended.

[6] The amici curiae present additional information concerning current research into the development of the adolescent brain.  They also provide information about the deleterious effects that

none of the proceedings below did Doe argue that these scientific developments render the guidelines invalid.  Nor would such a request have been proper at the current juncture.  A challenge to the validity of a general regulation "cannot be resolved by requesting declaratory relief in an appeal from an administrative agency decision because judicial review is confined to the administrative record."  Doe No. 10800, 459 Mass. at 630, citing G. L. c. 30A, § 14 (5).  See Doe No. 205614, 466 Mass. at 608 n.11.  We nevertheless make the following observations concerning the effect of the passage of time on the guidelines' validity.

As noted, the guidelines "must be accorded all the deference due to a statute" (citation omitted).  Doe No. 205614, 466 Mass. at 602.  "A party challenging the validity of a regulation must prove in a judicial proceeding 'that the regulation is illegal, arbitrary, or capricious.'"  Doe No. 10800, 459 Mass. at 629, quoting Borden, Inc. v. Commissioner of Pub. Health, 388 Mass. 707, 722, cert. denied sub nom. Formaldehyde Inst., Inc. v. Frechette, 464 U.S. 936 (1983).  We have cautioned that "guidelines that fail to heed growing scientific consensus in an area may undercut the individualized nature of the hearing to which a sex offender is entitled, an

the registration requirement can have on the lives of adolescent offenders.

important due process right." Doe No. 205614, supra at 608,

citing Doe No. 10800, supra at 626.  See Doe No. 151564, 456

Mass. at 623 n.6.

The United States Supreme Court has described "three

significant gaps between juveniles and adults," namely:

> "First, children have a '"lack of maturity and an
> underdeveloped sense of responsibility,"' leading to
> recklessness, impulsivity, and heedless risk-taking. . . .
> Second, children 'are more vulnerable . . . to negative
> influences and outside pressures,' including from their
> family and peers; they have limited 'contro[l] over their
> own environment' and lack the ability to extricate
> themselves from horrific, crime-producing settings. . . .
> And third, a child's character is not as 'well formed' as
> an adult's; his traits are 'less fixed' and his actions
> less likely to be 'evidence of irretrievabl[e]
> deprav[ity].'"

Miller v. Alabama, 132 S. Ct. 2455, 2464 (2012), quoting Roper

v. Simmons, 543 U.S. 551, 569, 570 (2005).  The Court explained

that its view of juvenile behavior rests

> "not only on common sense -- on what 'any parent
> knows' -- but on science and social science as well. . . .
> In Roper, we cited studies showing that '"[o]nly a
> relatively small proportion of adolescents"' who engage in
> illegal activity '"develop entrenched patterns of problem
> behavior."' . . .  And in Graham [v. Florida, 560 U.S. 48,
> 68 (2010)], we noted that 'developments in psychology and
> brain science continue to show fundamental differences
> between juvenile and adult minds' -- for example, in 'parts
> of the brain involved in behavior control.'"

Miller, supra, quoting Roper, supra at 569, 570.

The guidelines do not ignore the importance of the

distinctions, discussed in Miller, between adult and juvenile

offenders.  Rather, as explained, the guidelines delineate in

some detail the different ways in which they are to be applied to adults and to juveniles.  See, e.g., G. L. c. 6, § 178K (1) (e); 803 Code Mass. Regs. § 1.40(1), (3), (6), (7), (9)(c)(6), (14).

A question nevertheless remains, which cannot be answered on the record before us, whether the manner in which the guidelines differentiate between adults and juveniles is sound in view of current scientific research.  "SORB need not update its guidelines every time a new study is published," Doe No. 205614, 466 Mass. at 605, but "[w]here, as here, scientific knowledge in a field is rapidly evolving, . . . the applicable standards may require more frequent modification in order to reflect accurately the current state of knowledge" (citation omitted).  Doe No. 151564, 456 Mass. at 623 n.6, citing Commonwealth v. Lanigan, 419 Mass. 15, 27 (1994).  Given that the most recent studies cited in the guidelines were published in 2001, there is reason for some concern as to whether the guidelines continue to reflect accurately the current state of scientific knowledge.

Judgment affirmed.