NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

21-P-948

JOHN DOE, SEX OFFENDER REGISTRY BOARD NO. 460386

vs.

SEX OFFENDER REGISTRY BOARD.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

John Doe appeals from a Superior Court judgment on the pleadings affirming his classification by the Sex Offender Registry Board (SORB) as a level three (high risk) sex offender. See G. L. c. 6, § 178K (2) (c).  Doe claims error in the SORB hearing examiner's application of the statutory and regulatory factors[1] and argues that there was not clear and convincing evidence to support a level three classification.  We discern no error and therefore affirm.

Background.  On July 20, 2015, Doe was convicted on four counts of indecent assault and battery for sexually abusing two victims in June or July of 2011.  Victim 1 was Doe's seven year old daughter, who was the child of Doe and his ex-wife, and

_____

[1] See G. L. c. 6, § 178K (1); 803 Code Mass. Regs. § 1.33 (2016).

victim 2 was an eight year old friend of victim 1, and the daughter of Doe's then-girlfriend. Both victims reported Doe penetrating their vaginas with his hands and tongue and showing them pornographic movies on his cell phone.[2] Doe also slept in the same bed as victims 1 and 2 when neither child was wearing underwear. Doe received concurrent three to four year committed sentences on his convictions, followed by five years of probation.

Around the time Doe committed the index offenses, he was convicted of stalking and sentenced to probation. He later violated probation and was incarcerated for thirty days. Doe also "had a disorderly charge" continued without a finding in 1987 and two assault and battery charges filed and dismissed in 1993.

In March 2020, SORB notified Doe of his preliminary level three classification and Doe requested a hearing. At the hearing, fifty-one year old Doe testified that his criminal history was the result of misunderstandings, but acknowledged that he had violated the conditions of his pretrial release for his index offenses. Specifically, Doe admitted to breaching the condition that prohibited him from contacting his victims' mothers. Even though only one violation had ever officially

_____

[2] Doe was acquitted of disseminating obscene matter to a child.

2

been reported, Doe testified that he had contacted the victims' mothers, who were his ex-wife and ex-girlfriend, between six and eight times while the order was in effect, stating that "my emotions did get to me," as an explanation for his behavior. As to his sex offenses, Doe stated that the victims were looking at pornography on their own and he did not lick the vaginas of victim 1 or 2, but he did accidentally "poke" each victim's vagina with his finger after waking up to both girls "grabbing at" him. Doe later took "responsibility for touching them" by saying, "I regret what happened. At the time I struggled with why it would even be conceived sexual, but it is what it is." Doe testified he understood the reason "why I'm here" is "I didn't advocate for myself."

In addition to this testimony, the hearing examiner considered evidence of psychological or psychiatric profiles regarding Doe's risk to reoffend (factor 35), and victim impact statements from victim 1 and her mother (factor 38).[3] The examiner then applied risk aggravating factor 3 "with greater weight," risk elevating factors 7, 10, 11, 13, 18, 19, 21, and 22, and risk mitigating factors 28, 30, and 32, before finding on balance that the risk mitigating factors "do not ameliorate

---

[3] The hearing examiner acknowledged research articles Doe had submitted pursuant to factor 37 (other information related to the nature of sexual behavior) but declined to "consider them beyond what is already contemplated within [SORB's] [f]actors."

[Doe]'s high risk of sexual reoffending" or "high risk of dangerousness."  Further finding that Internet dissemination of Doe's registry information was warranted, the examiner ordered a level three classification.  A Superior Court judge affirmed "[a]fter careful review of the full administrative record in light of the standards applicable under G. L. c. 30A, § 14 (7)."

Discussion.  "Our inquiry on appeal is similar to the inquiry conducted by [the] Superior Court judge."  Doe, Sex Offender Registry Bd. No. 68549 v. Sex Offender Registry Bd., 470 Mass. 102, 108 n.3 (2014) (Doe No. 68549).  We may set aside or modify SORB's decision only if we determine "that the decision is in excess of SORB's statutory authority or jurisdiction, violates constitutional provisions, is based on an error of law, or is not supported by substantial evidence." Doe, Sex Offender Registry Bd. No. 496501 v. Sex Offender Registry Bd., 482 Mass. 643, 649 (2019).  We give due weight to SORB's experience, technical competence, and specialized knowledge, as well as to the discretionary authority conferred upon it, mindful that SORB hearing examiners have discretion "to consider which statutory and regulatory factors are applicable and how much weight to ascribe to each factor."  Doe No. 68549, supra at 109-110.

A level three classification is appropriate where SORB determines that the offender's risk of reoffense is high and the

4

degree of dangerousness posed to the public is such that a substantial public safety interest is served by active dissemination of the offender's registry information. See Doe, Sex Offender Registry Bd. No. 339940 v. Sex Offender Registry Bd., 488 Mass. 15, 30 (2021), citing Doe, Sex Offender Registry Bd. No. 3177 v. Sex Offender Registry Bd., 486 Mass. 749, 754 (2021). Three elements must be established by clear and convincing evidence: "(1) the offender's risk of reoffense, (2) the offender's dangerousness as a function of the severity and extent of harm the offender would present to the public in the event of reoffense, and (3) the public safety interest served by public access to the offender's information" (citation omitted). Id.

Doe argues that the examiner erred in his application of factor 10 (contact with criminal justice system) because he "made no findings of fact as to how [Doe's 1987 disorderly conduct charge and 1993 assault and battery charges], [which were] minor and remote in time, go to predicting Doe's future sexual misconduct." We do not agree that Doe's contacts were minor and remote in time. In addition to the disorderly conduct and assault and battery charges, in 2011, Doe was convicted of stalking and placed on probation, which he later violated. Doe also violated a no contact order when he was on pretrial

5

release.  There was no error in the hearing examiner's consideration of this factor.

Doe also argues that the examiner erred in failing to give him any credit for risk mitigating factor 33 (home situation and support systems) and factor 34 (stability in community), ignoring his lack of disciplinary issues while incarcerated, completion of sex offender treatment, his job prospects attributable to his educational and professional background, and support from his brother.  As an initial matter, Doe's lack of disciplinary issues and completion of sex offender treatment are not relevant to factors 33 and 34.  SORB's regulations only required the hearing examiner to consider Doe's behavior while incarcerated when determining whether to apply risk-elevating factor 12, which states that offenders who exhibit poor behavior while in custody present an increased degree of dangerousness.[4] See 803 Code Mass. Regs. § 1.33(12).  The regulations did not mandate the consideration of Doe's good behavior as a risk mitigating factor.  Similarly, the hearing examiner was only required to consider Doe's completion of sex offender treatment with respect to risk mitigating factor 32, which she did, in fact, apply "with full weight."

---

[4] It is worth noting that the hearing examiner did <u>not</u> apply factor 12 to Doe.

Doe's job prospects and familial support stand on different footing to the extent these circumstances may be considered under factors 33 and 34.  However, the only evidence of Doe's job prospects and familial support was Doe's uncorroborated testimony.  The examiner was not required to give it credit.

Here, the examiner found a level three classification appropriate because Doe committed multiple high-contact sex offenses against prepubescent children in his care who were and were not related to him, suggesting a large victim pool and potential for harm.  Doe also had a criminal history that included willfully violating no contact orders many times.  The examiner gave "full weight" to Doe's participation in sex offender treatment and considered Doe's age, but, after hearing from him, found that Doe, "still almost a decade from the prerequisite [sixty] years of age for child sex offenders, . . . would be unlikely to volitionally exercise the impulse control necessary for inhibiting and self-monitoring his inappropriate sexual urges towards potential [v]ictims in the future including such [v]ictims as extravulnerable prepubescent girls."

This finding, based on the examiner's assessment of Doe's credibility, is entitled to deference, see Doe, Sex Offender Registry Bd. No. 23656 v. Sex Offender Registry Bd., 483 Mass. 131, 138 (2019), and supports a level three classification.

Judgment affirmed.

By the Court (Ditkoff, Singh & Grant, JJ.[5]),

*Joseph F. Stanton*

Clerk

Entered: March 8, 2023.

---

[5] The panelists are listed in order of seniority.