NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

22-P-801

JOHN DOE, SEX OFFENDER REGISTRY BOARD NO. 5976

vs.

SEX OFFENDER REGISTRY BOARD.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

The plaintiff appeals from a Superior Court judgment affirming his reclassification by the Sex Offender Registry Board (SORB) as a level three sex offender.[1]  On appeal, the plaintiff claims that the hearing examiner (1) abused his discretion by admitting and relying on certain hearsay statements, and (2) erred by reclassifying the plaintiff as a level three sex offender.  We affirm.

---

[1] In 2005, the plaintiff was classified as a level two sex offender after he pleaded guilty in 1998 to indecent assault and battery on a child under fourteen, G. L. c. 265, § 13B, and accosting, G. L. c. 272, § 53.  These charges were brought after an eleven year old girl (victim 1) reported to police that her neighbor, the plaintiff, commented on victim 1's breasts, pulled her near him, kissed her on the lips, and then placed his head on her breasts.  Victim 1 attempted to pull away, but the plaintiff held her.  She also reported that the plaintiff repeatedly made lewd comments to her and her friend regarding their breasts.

Discussion. "Pursuant to G. L. c. 6, § 178L (3), [SORB] may reclassify any finally classified sex offender upon receipt of information that indicates the offender may present an increased risk to reoffend or degree of dangerousness," 803 Code Mass. Regs. § 1.32(1) (2016), including "information indicating the sex offender has . . . [b]een investigated for or charged with committing a new sex offense."  803 Code Mass. Regs. § 1.32(2) (2016).  "A reviewing court may set aside or modify [SORB]'s classification decision where it determines that the decision is in excess of [SORB]'s statutory authority or jurisdiction, is based on an error of law, is not supported by substantial evidence, or is an arbitrary and capricious abuse of discretion."  Doe, Sex Offender Registry Bd. No. 3177 v. Sex Offender Registry Bd., 486 Mass. 749, 754 (2021) (Doe No. 3177). See G. L. c. 30A, § 14 (7).

In making a classification decision, it is within the hearing examiner's discretion to determine which statutory and regulatory factors apply and how much weight to ascribe to each factor.  See Doe, Sex Offender Registry Bd. No. 68549 v. Sex Offender Registry Bd., 470 Mass. 102, 109-110 (2014) (Doe No. 68549).  See also G. L. c. 6, § 178K (1) (a)-(l); 803 Code Mass. Regs. § 1.33 (2016).  This court gives "due weight to [SORB's] experience, technical competence, and specialized knowledge," G. L. c. 30A, § 14 (7), and the burden is on the plaintiff, as

2

the appealing party, to demonstrate that the decision was invalid.  See Doe No. 3177, 486 Mass. at 757.

SORB's classification decision will be upheld if supported by "substantial evidence," which is "such evidence as a reasonable mind might accept as adequate to support a conclusion."  G. L. c. 30A, § 1 (6).  See G. L. c. 30A, § 14 (7) (e); Doe No. 68549, 470 Mass. at 109.  "It is the province of [SORB], not this court, to weigh the credibility of the witnesses and resolve any factual disputes."  Doe, Sex Offender Registry Bd. No. 10800 v. Sex Offender Registry Bd., 459 Mass. 603, 633 (2011) (Doe No. 10800).  "The range of evidence that may be considered by hearing examiners is not limited by the same rules of evidence that apply in court proceedings; hearing examiners may exercise their discretion to admit and give probative value to evidence 'if it is the kind of evidence on which reasonable persons are accustomed to rely in the conduct of serious affairs.'"  Doe, Sex Offender Registry Bd. No. 339940 v. Sex Offender Registry Bd., 488 Mass. 15, 26 (2021), quoting G. L. c. 30A, § 11 (2).  The hearing examiner may also consider subsidiary facts proven by a preponderance of the evidence.  See Doe, Sex Offender Registry Bd. No. 523391 v. Sex Offender Registry Bd., 95 Mass. App. Ct. 85, 91-93 (2019) (Doe No. 523391).

"In the context of administrative proceedings, hearsay evidence bearing indicia of reliability constitutes admissible and substantial evidence."  Doe No. 10800, 459 Mass. at 638.  Such indicia of reliability include "the general plausibility and consistency of the victim's or witness's story, the circumstances under which it is related, the degree of detail, the motives of the narrator, the presence or absence of corroboration and the like."  Doe, Sex Offender Registry Bd. No. 10304, v. Sex Offender Registry Bd., 70 Mass. App. Ct. 309, 312-313 (2007).  The hearing examiner may also consider as indicia of reliability "the consistency of the hearsay incident with other, known behavior, admissions by the offender, and independent corroboration" (citations omitted).  Doe No. 523391, 95 Mass. App. Ct. at 89.  On the other hand, "[i]ndicia of unreliability include failure to identify the source of information, a lack of detail, and a lack of information about the circumstances in which the statements were made."  Id. at 89-90.  However, "[t]he lack of criminal conviction does not render information contained within a police report inadmissible in an administrative proceeding."  Id. at 90.

Here, the plaintiff claims that the hearing examiner abused his discretion by admitting and relying on hearsay statements in a Department of Children and Families' (DCF) report pursuant to G. L. c. 119, § 51A, and a police report, in both of which the

4

plaintiff's girlfriend's fifteen year old daughter (victim 2) alleged that he sexually abused her on several occasions. In his decision to reclassify the plaintiff, the hearing examiner found that although the plaintiff had not yet been convicted of these offenses at the time of the hearing, victim 2's hearsay statements in these reports were "sufficiently detailed and reliable to be considered as further sexual misconduct."

The § 51A report provides that victim 2's boyfriend, James (a pseudonym), initially disclosed the sexual abuse allegations to his school guidance counsellor -- a mandated reporter as defined in G. L. c. 119, § 21. James showed his guidance counsellor text messages between him and victim 2, exchanged over Facebook, in which victim 2 stated that the plaintiff tried to get her to take her clothes off; wanted her to sit with him when no one was home; tried to give her a massage; and tried to get her to "drink," although alcohol was not specified.

Following this meeting, the mandated reporter met with victim 2 and her school guidance counsellor, and victim 2 reported that the most recent incident was about one week prior, when the plaintiff tried to put his arm around her. During the meeting, victim 2 was "very teary and crying," and stated that nobody, including her mother, knew about the alleged sexual abuse, which victim 2 reported had been occurring since she was in seventh grade, increasing in frequency.

5

A police investigation commenced shortly after the § 51A report was filed. The police detective's report contains a brief summary of the § 51A report and a summary of victim 2's subsequent forensic interview at the Children's Advocacy Center (CAC). The detective had observed the interview via a live feed in a nearby conference room, and the audio and video were recorded.

When the trained forensic interviewer asked victim 2 what brought her to CAC, victim 2 replied, "Um, my stepdad touched me." She then explained that he is not actually her stepfather but her mother's boyfriend of five years and identified him as the plaintiff. When asked to explain what she meant when she stated that the plaintiff had touched her, victim 2 asked if she could come back to that question. After some time, victim 2 was asked what she did not like about the plaintiff. She immediately became emotional and stated, "What he did to me." The forensic interviewer asked when the plaintiff had touched her. Victim 2 provided a very detailed account of a recent incident during which the plaintiff rubbed her shoulders and legs, moved her underwear and shorts to her other thigh, and then touched the outside of her vagina underneath her clothes with his thumb in a circular motion.

Victim 2 also described incidents during which the plaintiff told her that he would pay her twenty dollars if she

6

took nude pictures of herself for him; tried to give her massages and get her to take her clothes off; grabbed her breast underneath her clothes; and slapped her buttocks underneath her clothes.  In particular, victim 2 detailed an incident two years prior where she was playing video games in her mother's room when the plaintiff began rubbing her shoulders and back and asked her to take her clothes off.  When victim 2 refused, the plaintiff reached underneath her shirt, began massaging her ribs, and then grabbed her breast.  The plaintiff had also told victim 2 that he could teach her how to treat her former girlfriend "real right," and if she ever needed to show her girlfriend a "fun time," he could show victim 2 how to do it.

The police detective's report also summarizes James's subsequent forensic interview at CAC, during which James stated that victim 2 told him "a month or two ago" that the plaintiff "tries touching her and stuff."  Again, the detective observed the interview via a live feed in a nearby conference room, and the audio and video were recorded.  Although James no longer had the cell phone containing the text messages that he showed his guidance counsellor and could not log onto his Facebook account, he was able to recall what victim 2 told him.

Following the investigation, the plaintiff was charged with two counts of indecent assault and battery on a person aged fourteen or older, G. L. c. 265, § 13H, and one count of

7

enticing a child under the age of sixteen, G. L. c. 265, § 26C (b).[2]  These charges were still pending at the time of the 2021 reclassification hearing.

The hearing examiner did not abuse his discretion by admitting and relying on hearsay statements in the § 51A report and police report.  As the hearing examiner and Superior Court judge noted, victim 2 could recall many specific details about the sexual assaults, including what she was doing, the location of other household members, what she and the plaintiff were wearing, and the specific course of action the plaintiff took during the incidents.  That she could not always remember exactly when each incident occurred or certain little details is understandable, given that she described incidents that occurred over the course of three years.  Moreover, that victim 2 did not tell certain people about the plaintiff's inappropriate behavior, that some individuals expressed doubts about the veracity of the allegations, and that the messages between James and victim 2 were not available at the hearing is similarly understandable under the circumstances.  The incidents described in the statements were plausible, and two such incidents were

---

[2] One of the charges of indecent assault and battery on a person aged fourteen or older, G. L. c. 265, § 13H, was reduced from rape of a child with force, G. L. c. 265, § 22A, following arraignment.

8

similar to the prior sexual offenses[3] against victim 1 -- also a female child -- to which the plaintiff had pleaded guilty.

Additionally, the detective heard victim 2's statements during her forensic interview via a recorded live feed, which he inferably could have referred to in writing the police report. James's guidance counsellor, the mandated reporter, also spoke to victim 2 directly, and James's descriptions of what victim 2 told him were generally consistent with victim 2's own statements. Thus, the hearsay statements bore sufficient indicia of reliability to constitute admissible and substantial evidence of further sexual misconduct.

The plaintiff also argues that the hearing examiner erred by reclassifying him as a level three sex offender. We disagree. "Where [SORB] determines that the risk of reoffense is high and the degree of dangerousness posed to the public is such that a substantial public safety interest is served by active dissemination, it shall give a level [three] designation to the sex offender." G. L. c. 6, § 178K (2) (c). See Doe No. 3177, 486 Mass. at 754.

The hearing examiner adequately explained how the presence and application of the relevant factors in the context of the

---

[3] Although accosting is not an enumerated sex offense under G. L. c. 6, § 178C, the hearing examiner found that it was sexual in nature and considered it in his overall assessment of the plaintiff.

facts and circumstances in this case support, by clear and convincing evidence, that the plaintiff should be classified as a level three sex offender. He first noted that he applied two high-risk factors with increased weight: repetitive and compulsive behavior (factor 2); and adult offender with a child victim (factor 3). See 803 Code Mass. Regs. § 1.33(2), (3) (2016). As the regulations provide, "[SORB] may give increased weight to offenders who have been discovered and confronted (by someone other than the victim) or investigated by an authority for sexual misconduct and, nonetheless, commit a subsequent act of sexual misconduct. The most weight shall be given to an offender who engages in sexual misconduct after having been charged with or convicted of a sex offense." 803 Code Mass. Regs. § 1.33(2)(a) (2016). Additionally, "[f]or purposes of factor 3, [SORB] shall consider any victim younger than [sixteen] years old as a 'child victim.'" 803 Code Mass. Regs. § 1.33(3)(a) (2016). "Offenders who target prepubescent children, generally younger than [thirteen] years old, are more likely to have a deviant sexual interest and, therefore, pose an even higher risk of reoffense and degree of dangerousness and are given greater weight." Id.

Here, the plaintiff was previously convicted of sexual offenses with an eleven year old victim, and then engaged in further sexual misconduct against victim 2 when she was fifteen

10

years old and younger.  Thus, the hearing examiner was entitled to apply and give increased weight to factors 2 and 3.

The hearing examiner was also entitled to apply several risk-elevating factors:  relationship between the offender and victim (factor 7); number of victims (factor 22); contact with the criminal justice system (factor 10); violence unrelated to sexual assaults (factor 11); and noncompliance with community supervision (factor 13).  See 803 Code Mass. Regs. § 1.33(7), (10) (2016).

The hearing examiner found that the relationships between the plaintiff and his two victims were extrafamilial because victim 1 was a neighbor and victim 2 was his girlfriend's daughter.  See 803 Code Mass. Regs. § 1.33(7)(a)(2) (2016) ("Extrafamilial Victim includes . . . [a]ny person who has a recognizable non-intrafamilial relationship with the offender, such as a friend, co-worker, or acquaintance. . ."). Additionally, the hearing examiner applied factor 10 with moderate weight because although the plaintiff has a lengthy criminal history, most of his contact with the criminal justice system resulted in minimal sentences and dismissals.[4]  The hearing examiner also applied moderate weight to factor 11

---

[4] It appears from the decision that the hearing examiner implicitly recognized the plaintiff's offense-free time in the community from 2012 to 2018.  See 803 Code Mass. Regs. § 1.33(29) (2016).  In any event, this is not significant.

11

because although the plaintiff's criminal history included charges of intimidation of a witness and assault and battery on a police officer, the plaintiff's last violent offense occurred eight years prior to the hearing. Finally, the hearing examiner applied moderate weight to factor 13 because the plaintiff had violated his probation in 1996 and 2013, which occurred fifteen and eight years prior to the hearing, respectively.

Regarding risk-mitigating factors, the hearing examiner applied advanced age (factor 30) and materials submitted by the sex offender regarding stability in the community (factor 34). As the plaintiff was forty-four years old at the time of the hearing and SORB only considers advanced age to have a significant mitigating effect when the offender with child victims is sixty years old or older, the hearing examiner only applied minimal weight to this mitigating factor. See 803 Code Mass. Regs. § 1.33(30)(a) (2016). For factor 34, the plaintiff listed an address and reported that he is presently self-employed but did not specify the business. The hearing examiner applied moderate weight to this factor.

Contrary to the plaintiff's claims, the hearing examiner did not apply these factors "mechanically." The hearing examiner outlined his reasons for applying each factor and for the weight given each factor, and he weighed all the factors in concluding that the plaintiff's risk to reoffend, degree of

dangerousness, and the public safety interest are such that he should be classified as a level three sex offender.  In sum, the decision to classify the plaintiff as a level three sex offender did not exceed SORB's statutory authority or jurisdiction, was not based on an error of law, was supported by substantial evidence, and was not an arbitrary and capricious abuse of discretion.  See Doe No. 3177, 486 Mass. at 754.

Judgment affirmed.

By the Court (Meade, Singh & Smyth, JJ.[5])

Assistant Clerk

Entered:  January 5, 2024.

---

[5] The panelists are listed in order of seniority.