NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

23-P-1453

TERRY DOE, SEX OFFENDER REGISTRY BOARD NO. 526471

vs.

SEX OFFENDER REGISTRY BOARD.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

The plaintiff, Doe, appeals from a Superior Court judgment upholding his classification by the Sex Offender Registry Board (SORB) as a level three sex offender.  Doe argues that the hearing examiner's decision did not reflect the informed reasoning that our case law requires, and that the hearing examiner abused his discretion by not giving proper weight to the applicable mitigating factors in Doe's case.  We affirm.

Background.  We summarize the facts as found, and relied upon, by the hearing examiner.  In July of 2018, Doe pleaded guilty to five counts of rape of a child, G. L. c. 265, § 23, five counts of rape of a child with force, G. L. c. 265, § 22A, and five counts of indecent assault and battery on a child under

fourteen, G. L. c. 265, § 13B. Doe was sentenced to five to six years in State prison and five years of probation; at the time of the hearing, he was detained at the Massachusetts Treatment Center.

The convictions arose from a series of rapes that Doe perpetrated on two brothers, the sons of Doe's landlord, whom Doe babysat up to seven nights a week. The older brother was six years old when he first met Doe. The older brother reported that Doe brought him to a bed in Doe's apartment, removed his pants, and penetrated him anally. Doe raped the older brother in this manner for four years. The older brother further reported that Doe forced him to drink beer, and physically abused him. The younger brother also reported that he was anally penetrated, including with a vibrator. According to the older brother, there were three other boys who would sleep in Doe's apartment with him. Doe's nephew also reported to the police that Doe sexually assaulted him on multiple occasions when the nephew was between the ages of nine and seventeen; the nephew reported this when he was thirty-two years old, and the hearing examiner elected not to consider the allegation, because of the lack of detail and specificity in the report.

In May of 2022, following a hearing, Doe was classified as a level three sex offender. Applying the factors in 803 Code Mass. Regs. § 1.33 (2016), the hearing examiner determined that

2

Doe presented a high risk of reoffense. As to this determination, the hearing examiner considered that Doe raped two male children, with whom he was in an extrafamilial relationship (factors 3, 7, 17, 22); he gave full weight to factor 3, adult offender and child victim, as the victims were prepubescent, and to factor 7, relationship between the offender and victim, because Doe was in a position of trust as a frequent babysitter.[1]

The hearing examiner also considered several mitigating factors concerning Doe's risk of reoffense -- that Doe would be on probation following his commitment, that he was advanced in age, that he was participating in sex offender treatment, and that he had social supports and resources available in the community, including a home to which he would return (factors 28, 30, 32, 33, 34). The hearing examiner, however, qualified his application of some of these factors. The examiner gave minimal weight to factor 30, advanced age, because the petitioner was younger than sixty, and he noted, furthermore, that Doe had offended against the victims only a few years earlier, at age fifty. As to factor 34, stability in the community, the hearing examiner noted that Doe's resources in

---

[1] The hearing examiner also considered factor 17, male offender against male victim, as well as factor 22, the number of victims.

the community, including his plan to obtain certain licenses for construction work, were "prospective."  Additionally, as to factor 32, sex offender treatment, Doe had not, at the time of the hearing examiner's decision, successfully completed a sex offender treatment program; he was participating in one at the time.

In determining that Doe presented a high degree of dangerousness, the hearing examiner considered that Doe's victims were prepubescent children, that Doe anally penetrated the victims with his penis, and that he targeted multiple victims over an extended period of time (factors 3, 7, 19, 22, and 37).  The hearing examiner gave full weight to factor 3 (child victim), for the reasons stated above, and to factor 19, level of physical contact, based on the penile penetration.[2]  The hearing examiner applied only one mitigating factor in considering dangerousness, that Doe would be on probation for five years (factor 28).

Furthermore, in consideration of Doe's high risk of reoffense and high degree of dangerousness, the hearing examiner determined that Internet publication of Doe's registry

---

[2] The other factors considered as to Doe's dangerousness were factor 7, position of trust, factor 22, multiple victims, and factor 37, other useful information, to wit, the scope of Doe's sex offending and his ability to conceal his sexual interest in prepubescent male children.

4

information would be warranted "in the interest of public safety[,] to prevent male children such as the [v]ictims here from becoming [v]ictims of sex offenses, and to provide parents with adequate warning of the potential danger."

Doe sought judicial review of his classification in the Superior Court; a judge affirmed Doe's classification.

Discussion. Doe's principal argument on appeal is that the hearing examiner failed to adequately explain why the applicable risk-elevating factors justified Doe's level three classification, where the hearing examiner found that several risk-mitigating factors applied. Doe claims that the examiner employed a "checklist" approach, rather than engaging with the particular facts and explaining how he was weighing the applicable factors, and why. We will reverse or modify SORB's classification decision "only if we determine that the decision is unsupported by substantial evidence or is arbitrary or capricious, an abuse of discretion, or not in accordance with law." Doe, Sex Offender Registry Bd. No. 10800 v. Sex Offender Registry Bd., 459 Mass. 603, 633 (2011). We discern no error here.

The hearing examiner not only identified multiple risk factors indicating a high risk of reoffense and a high degree of dangerousness, but also specified that several risk factors applied with full weight. In particular, Doe offended against

5

multiple victims who were not only children, but prepubescent children, indicating both a high risk of reoffense and high degree of dangerousness (factor 3, applied with increased weight; factor 22). The victims were male, and Doe was in a position of trust toward the victims as their frequent babysitter, both indicating an increased risk of reoffense (factor 7, applied with full weight; factor 17). And Doe's sex offenses involved penile penetration, indicating a high degree of dangerousness (factor 19, applied with full weight). Furthermore, the hearing examiner considered, in evaluating dangerousness, that Doe was able to conceal his sexual interest in prepubescent children for a significant amount of time (factor 37).[3]

Doe also argues that the hearing examiner "disregard[ed] . . . the evidence in support of mitigation" to reach a level three classification. It is apparent, however, that the hearing examiner did consider the mitigating evidence, but did not

_____

[3] Doe argues that the hearing examiner "placed undue emphasis upon the nature and severity of Doe's offenses," and in particular that the hearing examiner placed too much weight on factor 37. However, it is within the hearing examiner's discretion to consider how much weight to give to each factor. See Doe, Sex Offender Registry Bd. No. 68549 v. Sex Offender Registry Bd., 470 Mass. 102, 109-110 (2014). Here, where the underlying offenses involved multiple rapes of child victims over an extended period of time, and where Doe leveraged a position of trust to carry out these rapes, the hearing examiner did not abuse his discretion by placing significant weight on the nature and severity of the offenses.

6

believe that evidence outweighed the significant evidence of future risk and dangerousness. As to the risk of reoffense, the hearing examiner applied several of the applicable mitigating factors with qualifications, as noted above. For example, as to sex offender treatment, the examiner noted that Doe was participating in such treatment but had not yet completed it (factor 32).[4] Regarding the degree of dangerousness, the hearing examiner found that only one mitigating factor applied, that Doe would be on probation (factor 28);[5] in contrast, and as set out above, the hearing examiner applied multiple risk-elevating factors with full weight. See Doe, Sex Offender Registry Bd. No. 68549 v. Sex Offender Registry Bd., 470 Mass. 102, 109-110 (2014) ("A hearing examiner has discretion . . . to consider which statutory and regulatory factors are applicable and how much weight to ascribe to each factor"). Accordingly, although the hearing examiner could have provided a more fulsome account of his reasoning, we are satisfied that the hearing examiner's decision was "based on a sound exercise of informed discretion

---

[4] Doe argues that the hearing examiner understated Doe's progress in treatment; however, the hearing examiner did review the details of his treatment progress, noting, for example, that Doe "had progressed steadily to the intensive phase of treatment," which was Doe's current stage at the time of the hearing.

[5] Contrary to Doe's argument, the hearing examiner fully considered the terms of Doe's probation.

rather than the mechanical application of a checklist."[6]  See

Doe, Sex Offender Registry Bd. No. 11204 v. Sex Offender

Registry Bd., 97 Mass. App. Ct. 564, 574 (2020), quoting Doe,

Sex Offender Registry Bd. No. 136652 v. Sex Offender Registry

Bd., 81 Mass. App. Ct. 639, 651 (2012).

Judgment affirmed.

By the Court (Massing,
  Englander & D'Angelo, JJ.[7]),

_Paul Little_

Clerk

Entered:  June 24, 2025.

---

[6] Doe makes the additional argument that the hearing examiner failed to justify the Internet dissemination of his registration information.  The hearing examiner found, however, that in consideration of Doe's offenses, active dissemination was warranted "in the interest of public safety[,] to prevent male children such as the [v]ictims here from becoming [v]ictims of sex offenses, and to provide parents with adequate warning of the potential danger."  This conclusion was supported by the facts.  Cf. Doe, Sex Offender Registry Bd. No. 496501 v. Sex Offender Registry Bd., 482 Mass. 643, 655 (2019) ("Where a sexually violent offender presents a moderate risk to reoffend and a moderate degree of dangerousness, Internet publication will almost invariably serve a public safety interest by notifying potential victims of the risks presented by the offender in their geographic area").

[7] The panelists are listed in order of seniority.