NOTICE: Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale. Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent. See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

22-P-691

JOHN DOE, SEX OFFENDER REGISTRY BOARD NO. 97354

vs.

SEX OFFENDER REGISTRY BOARD.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

The plaintiff, John Doe,[1] appeals from a Superior Court judgment affirming his classification by the Sex Offender Registry Board (SORB) as a level one sex offender. Doe claims that his classification was unsupported by substantial evidence and the hearing examiner abused her discretion by rejecting expert witness opinion. Moreover, Doe contends that the hearing examiner abused her discretion by considering Doe's statements to the Department of Children and Families (DCF) concerning abuse allegations involving his daughter. We affirm.

Background. We summarize the facts as set forth by the hearing examiner, supplemented by materials included in the

_____

[1] A pseudonym.

administrative record, and reserve certain facts for later discussion.

1.  Doe's underlying offenses.  In 2002, Doe, on multiple occasions, grabbed the breasts of two of his female high school classmates (victim one and victim two), ages fifteen and sixteen; neither victim consented to Doe's physical contact. Doe was seventeen years old at that time.  As a result, Doe was charged with two counts of indecent assault and battery on a person over fourteen in violation of G. L. c. 265, § 13H.  On June 20, 2002, Doe pleaded guilty to two counts of the lesser included offense of assault and battery; he was sentenced to two years of probation.  While Doe did not plead guilty to a sex offense, as defined in G. L. c. 6, § 178C, the hearing examiner considered his actions as additional acts of sexual misconduct in her overall analysis of the risk and danger he posed.

Subsequently, in 2004, Doe sexually assaulted his ten year old female neighbor (victim three).  After commenting that he "wouldn't mind fucking" the victim, he followed her into a barn, held her hands behind her back and began "humping" her by rubbing his groin against her buttocks while making comments such as "is this what you want?"  Doe also pinched her buttocks. Consequently, on November 30, 2004, Doe pleaded guilty to one count of indecent assault and battery on a child under fourteen

years in violation of G. L. c. 265, § 13B, and was sentenced to three years of probation.

2. Procedural history and newly submitted evidence. In June 2005, Doe accepted SORB's recommendation that he be classified as a level two sex offender. In 2014, Doe filed a motion for reclassification, and after a hearing was held in February 2015, SORB reclassified Doe as level one. In November 2019, Doe moved for relief from sex offender registration under G. L. c. 6, § 178K (2) (d) and 803 Code Mass. Regs. § 1.29(1) (2016).[2] In response, SORB recommended Doe remain classified as a level one sex offender. Doe then requested an administrative review of the recommendation.

An examiner conducted a de novo hearing on November 4, 2020, and January 13, 2021, at which SORB submitted evidence to include the police reports documenting Doe's prior DCF records from 2016 and 2017 outlining allegations of Doe's sexual abuse of his three year old daughter. SORB further relied on an updated board of probation record evidencing no new entries and correspondence from the police department.

Doe relied on Dr. Eric Brown's (Psy.D), testimony and written evaluation, along with the psychological evaluations of

_____

[2] At oral argument before us, counsel for SORB acknowledged that the motion could also have been treated as seeking to terminate Doe's obligation to register, under G. L. c. 6, § 178G, and 803 Code Mass. Regs. § 1.30 (2016).

3

Doe conducted by Frank E. Vargo, Ed.D., and Elizabeth L. Leonard, Ph.D. In sum, Dr. Brown opined that Doe's atypical autism and attention deficit disorder diagnoses contributed to Doe's sexual offending as a teenager, and while there is no direct correlation between these diagnoses and sexual recidivism, the diagnoses were contributing factors to the offending behavior and such symptoms of those diagnoses lessen with age. Dr. Brown testified as to his belief that Doe has learned from his mistakes, matured, and benefitted from treatment, and thus, Doe posed a "very low risk for reoffending" and did not pose "any modicum of dangerousness to the community." Doe also submitted several studies concerning sex offenders' desistance and late adolescent recidivism. In addition, Doe supplied updated information on his support and stability, his relationships, and counseling. After considering all the evidence submitted at the hearing, the examiner ordered Doe to continue to register as a level one sex offender.

Doe proceeded to file a complaint for judicial review and a motion for judgment on the pleadings. A Superior Court judge denied Doe's motion and affirmed the level one classification. Doe timely appealed.

Discussion. Our review is narrow. We may set aside or modify SORB's decision only if we determine "that the decision is in excess of SORB's statutory authority or jurisdiction,

4

violates constitutional provisions, is based on an error of law, or is not supported by substantial evidence." Doe, Sex Offender Registry Bd. No. 496501 v. Sex Offender Registry Bd., 482 Mass. 643, 649 (2019) (Doe No. 496501). Moreover, hearing examiners have been delegated extensive discretion "to consider which statutory and regulatory factors are applicable and how much weight to ascribe to each factor." Doe, Sex Offender Registry Bd. No. 68549 v. Sex Offender Registry Bd., 470 Mass. 102, 109-110 (2014) (Doe No. 68549). Our review is principally limited to whether the hearing examiner has examined the relevant factors and provided an adequate explanation for his or her conclusions. See Doe No. 496501, supra at 657 (hearing examiner is required to "make explicit his or her findings" regarding risk of dangerousness and reoffense, and "make clear that each determination is supported by clear and convincing evidence"). See also Doe, Sex Offender Registry Bd. No. 136652 v. Sex Offender Registry Bd., 81 Mass. App. Ct. 639, 651 (2012) ("SORB's decision must show that the classification is based on a sound exercise of informed discretion rather than the mechanical application of a checklist or some other reflex").

1. Substantial evidence and weight of risk factors. When reviewing a decision by SORB, we "must determine whether the decision is supported by substantial evidence" (citation omitted), Doe, Sex Offender Registry Bd. No. 10800 v. Sex

5

Offender Registry Bd., 459 Mass. 603, 632 (2011) (Doe, No. 10800), which is defined as "such evidence as a reasonable mind might accept as adequate to support a conclusion." Id., quoting G. L. c. 30A, § 1 (6). Our review "does not turn on whether, faced with the same set of facts, we would have drawn the same conclusion . . . but only whether a contrary conclusion is not merely a possible but a necessary inference" (quotation and citation omitted). Doe No. 68549, 470 Mass. at 110.

Doe contends that the continued level one classification is not supported by substantial evidence and the examiner erred in the application of several risk-mitigating factors. We disagree.

In the present case, the record reveals a comprehensive and reasonable analysis and weighing of the various SORB factors. The examiner applied numerous risk-elevating factors, all of which were supported by the evidence. For instance, the examiner applied factor 2 (repetitive and compulsive behavior) with the most weight because Doe sexually assaulted victim three one month after he completed probation supervision for his assaults of victim one and victim two. See 803 Code Mass. Regs. § 1.33(2) (2016). The examiner also applied factor 7 (relationship between offender and victim). See 803 Code Mass. Regs. § 1.33(7)(a)(2). Doe was a classmate of victim one and victim two, and a neighbor of victim three, rendering his

6

relationship with each victim extrafamilial in nature. See id. Additionally, the examiner found that Doe sexually assaulted each of the victims in areas where he did not have a reasonable expectation of privacy, and that doing so reflected his lack of impulse control, supporting the application of factor 16 (public place) to further elevate Doe's risk of reoffense. See 803 Code Mass. Regs. § 1.33(16)(a). Moreover, the examiner applied factor 22 (number of victims), because Doe committed acts of sexual misconduct against multiple victims, increasing Doe's risk of reoffense and degree of dangerousness. See 803 Code Mass. Regs. § 1.33(22)(a).

In addition, the examiner considered Doe's past and current alcohol use, along with his nightly use of marijuana, but ultimately attributed minimal weight to factor 9 (alcohol and substance abuse), because substances did not play a direct role in Doe's sexual offending history. The examiner considered Doe's criminal record, including his past violations of terms of probation supervision. She ultimately gave only minimal weight to factor 10 (contact with criminal justice system) and factor 13 (noncompliance with community supervision), due to their datedness in Doe's case. Further, the examiner gave some weight

7

to a handful of mitigating factors.[3]  See Doe No. 68549, 470 Mass. at 109-110.  The examiner's decision was supported by substantial evidence, and we discern no abuse of discretion.

We next address Doe's claim that the examiner based her determination solely on the characteristics of his offense and misconduct committed sixteen years ago when he was an adolescent.  Doe asserts the examiner did not identify facts that postdated his past offense to indicate he poses a current risk or danger and disclosed no evaluative process used to balance the characteristics of his past offense against his law-abiding life for the past sixteen years.  We reject Doe's contention.  The examiner acted within her discretion in balancing the mitigating factors against the risk-aggravating factors, accounting for Doe's offense-free time in the community.  See Doe, Sex Offender Registry Bd. No. 23656 v. Sex Offender Registry Bd., 483 Mass. 131, 138-139 (2019).  Ultimately, the examiner did not abuse her discretion in determining that Doe's risk of reoffense and degree of

_____

[3] The examiner attributed full mitigating weight to Doe's sixteen years of offense-free time in the community, factor 29 (offense-free time in the community).  The examiner also found, and applied minimal weight to, Doe's completion of a sex offender treatment program, factor 32 (sex offender treatment program), because he thereafter committed his governing sex offense in 2004.  The examiner found that Doe has some community support and applied factor 33 (home situation and support system) with moderate weight to her decision.  She also applied full weight to factor 34 (stability in the community).

dangerousness were low, such that a level one classification was appropriate and supported by substantial evidence.[4]  See Doe, No. 10800, 459 Mass. at 632.

2.  Expert opinion, scientific evidence, and Doe's statements to DCF.  Doe contends that the examiner erroneously rejected the conclusion of Doe's expert, Dr. Brown, who opined that Doe currently poses an exceptionally low risk of reoffense. Doe further argues that the examiner did not properly weigh current scientific evidence on the desistance (reduction in criminal behavior) of sex offenders after ten to fifteen offense-free years in the community.  These claims are unavailing.

"[E]ven where the board does not present any contrary expert testimony," the examiner is not bound to adopt the expert's conclusions.  Doe 10800, 459 Mass. at 637.  Thus, the examiner was not required to accept Dr. Brown's opinion regarding Doe's risk of reoffense, see Doe No. 68549, 470 Mass.

_____

[4] To the extent Doe argues that that SORB must rely on "facts that postdated his past offense" to require continued registration after a period of years, Doe was found to present a risk not simply because he committed offenses in the past, but because of what the statute and regulations (supported by research) say those offenses signify about his risk of reoffense, even taking the passage of time and other mitigating factors into account.  The examiner did not err by extrapolating from Doe's criminal record to find that some cognizable current risk of dangerousness remained.  The examiner also took into account Doe's more recent conduct in touching and smelling his young daughter's vagina in 2016, as discussed infra.

at 112, and did not abuse her discretion in rejecting portions of it. The examiner did not, as Doe suggests, ignore Dr. Brown's low risk assessment or fail to explain her reasons for reaching a different conclusion. Rather, the examiner spent several pages addressing the expert's testimony, evaluation, and opinion, and explained in detail the basis for her partial disagreement with it. While the examiner agreed with Dr. Brown's conclusion that Doe presented a low risk of reoffense and degree of dangerousness, she disagreed the risks were "exceptionally low." Of note, the examiner disagreed with Dr. Brown's decision not to consider Doe's indecent assault on his two classmates in 2002, as described above, in his assessment of Doe's risk for recidivism. The examiner relied on this information only after concluding the victims' statements to the police were detailed and corroborated. Moreover, the examiner noted that Doe admitted to the victims' accusations when he was interviewed by the investigating officer. The examiner did not abuse her discretion by considering this conduct as well as the relevant risk factors that stemmed from it in assessing Doe's classification. She was not required to credit Dr. Brown's testimony that Doe's minimization of his past sex offense was indirectly attributable to his autism; further, she could take into account Dr. Brown's testimony that a different mental health professional could arrive at a different conclusion than

10

Dr. Brown when assessing a given offender's dynamic risk factors.

Doe also argues that the hearing examiner abused her discretion in failing to properly weigh research articles presented by Doe concerning sex offenders' desistance and late adolescents' recidivism. We disagree. The record instead shows that the examiner duly considered the two research studies that Doe submitted into evidence. The examiner noted that the scientific articles reflect similar research as to what is considered under SORB's regulatory factors, particularly factor 29. Cf. Doe No. 68549, 470 Mass. at 113-114 (no abuse of discretion to disregard Doe's experts where guidelines explicitly required consideration of Doe's youth, and examiner did so). Despite their recency, she was not required to treat the two articles as controlling. Doe submitted a third study about juvenile sexual recidivism rates; the examiner reasonably concluded that Doe's reliance on this article is misplaced.[5]

Doe also asserts that the hearing examiner abused her discretion by considering Doe's statements to a special agent and to DCF investigators about inappropriately touching his daughter's vagina in 2016 and later sexually fantasizing about

---

[5] The examiner found that because the samples in the study were drawn exclusively from juveniles, the study was not relevant because Doe was not a juvenile offender.

his fiancée.  These statements came to light after the child's mother accused him of the inappropriate touching.  Doe contends the examiner should not have considered such statements, because Dr. Brown testified that Doe's statements were the product of his autism rather than any sexual deviance.  The examiner ultimately declined to consider these allegations as additional acts of sexual misconduct because no criminal charges arose from the allegations, there was no medical evidence of sexual abuse, and DCF found the allegations to be unsupported.  The examiner found as a subsidiary fact that Doe touched and smelled his daughter's vagina based on his concern that something was medically wrong with her, and further, found reliable Doe's admission that he sexually fantasized about his fiancée afterwards.

It is well established that "a hearing examiner may consider subsidiary facts that have been proved by a preponderance of the evidence."  Doe, Sex Offender Registry Bd. No. 3177 v. Sex Offender Registry Bd., 486 Mass. 749, 756-757 (2021), citing Doe No. 496501, 482 Mass. at 656.  Here, the examiner undertook the appropriate analysis to assess the reliability of these allegations and Doe's corresponding statements, and she reasonably found that while such allegations were unsubstantiated, Doe's statements to DCF evidenced Doe's poor judgment and boundary issues.  Therefore, the examiner's

12

decision was supported by substantial evidence in the record and, accordingly, we find no error in the Superior Court's judgment affirming the examiner's classification of Doe as a level one sex offender.

Judgment affirmed.

By the Court (Milkey, Sacks &
  Smyth, JJ.[6]),

Clerk

Entered:  August 19, 2024.

---

[6] The panelists are listed in order of seniority.