MURRAY'S LIQUORS, INC. *vs.* ALCOHOLIC BEVERAGES
CONTROL COMMISSION & another.[1]

No. 97-P-1598.

Suffolk. March 9, 1999. - October 19, 1999.

Present: PERRETTA, PORADA, & LENK, JJ.

*Alcoholic Liquors,* License, Sale to minor. *Administrative Law,* Substantial
evidence. *Constitutional Law,* Full faith and credit, Equal protection of
laws.

Substantial evidence supported the conclusion of the Alcoholic Beverages
Control Commission, in upholding the suspension of the license of a seller
of alcoholic beverages, that the seller's reliance on a Massachusetts driver's
license in selling beer to a minor was not reasonable. [102-103]
No violation of the full faith and credit and equal protection clauses of the
United States Constitution arose from the provisions of G. L. c. 138,
§ 34B, where the distinction therein drawn between Massachusetts drivers'
licenses and passports, which may reasonably be relied on as identifying
documents by vendors of alcoholic beverages, and out-of-State drivers'
licenses, which may not be so relied upon, was rationally related to the
furtherance of a legitimate State interest, viz., to encourage vendors to
refrain from selling alcoholic beverages to minors. [103-105]

CIVIL ACTION commenced in the Superior Court Department on
November 8, 1995.

The case was heard by *Barbara J. Rouse,* J.

*Evan T. Lawson* for the plaintiff.

*Jane L. Willoughby,* Assistant Attorney General, for Alcoholic
Beverages Control Commission.

*Richard G. Chmielinski,* Assistant City Solicitor, for Board of
License Commissioners of Newton.

PERRETTA, J. General Laws c. 138, § 34B, provides that a
licensed seller of alcoholic beverages who reasonably relies
upon a Massachusetts driver's license as proof of sufficient age
to purchase such beverages will be presumed to have exercised

[1]Board of License Commissioners of Newton.

due care in making the sale. Murray's Liquors, Inc. (Murray's), sold alcoholic beverages to four minors, three of whom presented false out-of-State drivers' licenses as proof of their ages. On appeal from a judgment of the Superior Court affirming the decision of the Alcoholic Beverages Control Commission (commission) upholding the local licensing board's (board) suspension of its license, Murray's principal argument is that § 34B violates the full faith and credit and equal protection clauses of the Federal Constitution because it does not extend the benefit of the presumption of due care to sellers of alcoholic beverages who rely upon out-of-State drivers' licenses. We affirm the judgment.

1. *The presumption.* As here relevant, the second paragraph of G. L. c. 138, § 34B, as amended by St. 1994, c. 48, § 1, reads:

> "Any [liquor] licensee, or agent or employee thereof, under this chapter who reasonably relies on a . . . liquor purchase identification card or motor vehicle license issued pursuant to section eight of chapter ninety, or on a valid passport issued by the United States government, or by the government, recognized by the United States government, of a foreign country, or a valid United States issued military identification card, for proof of a person's identity and age shall not suffer any modification, suspension, revocation or cancellation of such license, nor shall he suffer any criminal liability, for delivering or selling alcohol or alcoholic beverages to a person under twenty-one years of age. Any licensee, or agent or employee thereof, under this chapter, who reasonably relies on such a liquor purchase identification card or motor vehicle license issued pursuant to said section eight, for proof of a person's identity and age shall be presumed to have exercised due care in making such delivery or sale of alcohol or alcoholic beverages to a person under twenty-one years of age. Such presumption shall be rebuttable; provided, however, that nothing contained herein shall affect the applicability of section sixty-nine."[2]

2. *The evidence.* During the late afternoon of February 9,

---

[2] General Laws c. 138, § 34, prohibits the sale of alcoholic beverages to any person under twenty-one years of age, and § 69 prohibits any on-premises sale of alcoholic beverages to an intoxicated person.

1995, Newton police officer Richard M. McGrath saw four males loading several cases of beer into the trunk of a taxicab outside of Murray's. All four appeared to McGrath to be about eighteen or nineteen years of age. McGrath stopped the taxicab and asked the four young men whether any of them was at least twenty-one years of age. All said no and, in response to Mc-Grath's request, produced valid identification confirming the fact that each was underage. When McGrath next asked whether any of them possessed documentation indicating that he was over twenty-one, two produced out-of-State licenses, one of which did not match the appearance of the holder. The second license had the correct name of the individual but an erroneous date of birth. McGrath confiscated the liquor and recovered the sales receipts which evidenced two separate sales. Later that same day, McGrath again saw a taxicab pull up in front of Murray's. Two males, youthful in appearance, got out, went into the store, and purchased two cases of beer. When they saw the police cruiser, they put the cases on the ground and started to walk away. McGrath stopped and questioned them. Both admitted to being underage, and one told McGrath that he had shown a false out-of-State license to the sales clerk.

Two days later, McGrath saw two youthful appearing males go into Murray's and exit with beer. Both were underage. One of them told McGrath that he had a transparency that altered the date of his birth on his out-of-State license. McGrath escorted this young man back into Murray's and spoke with the sales clerk. The clerk told McGrath that, prior to the sale, this purchaser had produced a Massachusetts license. The young man then gave McGrath the Massachusetts license which had been issued in the name of another. The young man told Mc-Grath that he had found the license at his school.

3. *Murray's reliance on the Massachusetts license.* As to one of the four sales, Murray's argues that it reasonably relied upon the Massachusetts license presented to the sales clerk. The standard of review on this issue is a narrow one, that is, whether the commission's decision was supported by substantial evidence. "Judicial inquiry under the substantial evidence test is limited to determination of whether, within the record developed before the administrative agency, there is such evidence as a reasonable mind might accept as adequate to support the agency's conclusion." *Seagram Distil. Co.* v. *Alcoholic Bevs. Control Commn.*, 401 Mass. 713, 721 (1988).

There was substantial evidence before the commission to show that Murray's reliance on the Massachusetts license in selling beer to the minor was not reasonable. At the time of the sale, the minor was nineteen years of age. He presented a license stating that he was twenty-three. McGrath testified that, although the minor's hair and skin pigmentation appeared, at a glance, similar to the photographed male, the differences between the two individuals were apparent. He stated that a person would be able to discern those differences within thirty seconds and know that the photograph on the license did not depict the individual presenting it as proof of his age. McGrath also said that the minor appeared to him to be no more than eighteen years old.

In determining whether substantial evidence exists, the commission functions as the finder of facts and determines the credibility and weight to be given to the evidence before it. See *Guarino* v. *Director of the Div. of Employment Sec.*, 393 Mass. 89, 92 (1984), and cases therein cited. On the evidence presented to the commission, we agree with the Superior Court judge's conclusion that there was substantial evidence to show that Murray's reliance upon the Massachusetts driver's license was not reasonable.

4. *Murray's reliance on the out-of-State licenses.* As to the remaining three sales, Murray's argues that the legislative line-drawing in § 34B — that a vendor may reasonably rely upon Massachusetts drivers' licenses as well as passports issued by the United States government and other governments recognized by it but not upon out-of-State drivers' licenses — violates the full faith and credit and equal protection clauses of the Federal Constitution.

a. *Full faith and credit.* Article IV of the Federal Constitution — and its implementing statute, 28 U.S.C. § 1739 (1994) — command that full faith and credit be granted to valid "public Acts, Records and judicial Proceedings" as well as to valid State records.[3] Compliance with this Federal mandate is found in G. L. c. 90, § 10, which accords nonresidents of Massachusetts the right and privilege to drive a motor vehicle in

---

[3]More specifically and as relevant, § 1739 reads: "All nonjudicial records . . . kept in any public office of any State . . . shall be proved or admitted in any court . . . in any other State . . . . Such records . . . shall have the same full faith and credit in every court . . . within the United States . . . as they have by law or usage in the courts . . . of the State . . . from which they are taken."

Massachusetts in reliance upon drivers' licenses issued by their home States.[4]

Section 34B does not, in any way, infringe upon the right of a holder of an out-of-State driver's license to drive on the roadways of Massachusetts, nor does the statute prohibit anyone from presenting or accepting such license as proof of the identity or age of a purchaser of alcoholic beverages. Rather, § 34B simply affords certain protections to a liquor licensee who reasonably relies upon a Massachusetts driver's license as proof of the requisite age to purchase alcoholic beverages. Our sister States are free to enact similar legislation. See, e.g., Mich. Comp. Laws Ann. §§ 436.1801, 801(7) (West Supp. 1999); Ohio Rev. Code Ann. § 4301.639(A) (Baldwin 1995).

b. *Equal protection.*[5] "The Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws.' " *Cleburne* v. *Cleburne Living Center, Inc.*, 473 U.S. 432, 439 (1985), quoting from *Plyler* v. *Doe*, 457 U.S. 202, 216 (1982). Because Murray's does not, and cannot, argue that § 34B burdens a suspect group or fundamental interest, the question is whether the statute is rationally related to the furtherance of a legitimate State interest. *Dickerson* v. *Attorney Gen.*, 396 Mass. 740, 743 (1986). *Tobin's Case*, 424 Mass. 250, 252-253 (1997). *Chebacco Liquor Mart, Inc.* v. *Alcoholic Bevs. Control Commn.*, 429 Mass. 721, 722 (1999). Section 34B serves a legitimate State interest, viz., to encourage vendors to refrain from putting alcoholic beverages in the hands of minors. See *Michnik-Zilberman* v. *Gordon's Liquor, Inc.*, 390 Mass. 6, 11-12 (1983).

As noted in *Take Five Vending, Ltd.* v. *Provincetown*, 415

---

[4]Section 10, as appearing in St. 1985, c. 146, reads, in pertinent part: "The motor vehicle of a nonresident may be operated on the ways of the commonwealth . . . by any non-resident operator without a license from the registrar if the nonresident operator is duly licensed under the laws of the state or country where such vehicle is registered and has such license on his person or in the vehicle in some easily accessible place."

[5]Murray's does not challenge the constitutionality of § 34B by reason of the establishment of a presumption. See, e.g., *Mobile, Jackson & Kansas City R.R.* v. *Turnipseed*, 219 U.S. 35, 42-43 (1910); *DiLoreto* v. *Fireman's Fund Ins. Co.*, 383 Mass. 243, 248 (1981); *Tobin's Case*, 424 Mass. 250, 255 (1997). Rather, its argument is that, because it reasonably relied upon out-of-State drivers' licenses, the equal protection clause entitled it to the benefit of the presumption.

Mass. 741, 748 (1993), citing *Marshfield Family Skateland, Inc.* v. *Marshfield*, 389 Mass. 436, 445 (1983), the "rational basis test . . . is the lowest level of judicial scrutiny." Murray's has the burden of proof on the issue of the invalidity of the statute, a burden described in *Commonwealth* v. *Henry's Drywall Co.*, 366 Mass. 539, 541 (1974), as "onerous," that is, "a statutory classification will not be set aside as a denial of equal protection or due process if any state of facts reasonably may be conceived to justify it." *Id.* at 542. *Take Five Vending, Ltd.* v. *Provincetown*, 415 Mass. at 748. "Moreover, . . . it is entirely irrelevant for constitutional purposes whether the conceived reason for the challenged distinction actually motivated the legislature." *Federal Communications Commn.* v. *Beach Communications, Inc.*, 508 U.S. 307, 315 (1993).

We conclude that it was conceivable that the Legislature was of the opinion that Massachusetts vendors of alcoholic beverages are likely to be more familiar with drivers' licenses or liquor purchase identification cards issued by the Commonwealth than with those issued by the other forty-nine States. It is also conceivable that the Legislature extended the "reasonable reliance" defense to passports based upon the view that false passports would rarely be used to purchase liquor, especially in view of the Federal consequences for use of false passports, both Federal and foreign. See, e.g., 18 U.S.C. §§ 1541-1544 (1994); *United States* v. *Dangdee*, 616 F.2d 1118, 1119 (9th Cir. 1980).

As stated in *Sperry & Hutchinson Co.* v. *Director of the Div. on the Necessaries of Life*, 307 Mass. 408, 418 (1940), "It is not for us to inquire into the expediency or the wisdom of the legislative judgment. Unless the act of the Legislature cannot be supported upon any rational basis of fact that reasonably can be conceived to sustain it, the court has no power to strike it down as violative of the Constitution."

*Judgment affirmed.*