NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

24-P-1462

JOHN DOE, SEX OFFENDER REGISTRY BOARD NO. 528660

vs.

SEX OFFENDER REGISTRY BOARD.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

The plaintiff, John Doe, appeals from a Superior Court judgment affirming a Sex Offender Registry Board (board) decision classifying Doe as a level two sex offender.  He claims that the hearing examiner (1) improperly acted as an expert by finding that Doe had a deviant sexual interest in nonconsenting females, (2) improperly rejected his expert evidence, (3) improperly relied on unreliable hearsay evidence, and (4) erred in concluding that his classification as a level two sex offender was supported by clear and convincing evidence.  We affirm.

Background.  We summarize the facts as found by the hearing examiner, "supplemented by undisputed facts from the record,"

and reserve certain facts for later discussion. Doe, Sex Offender Registry Bd. No. 10800 v. Sex Offender Registry Bd., 459 Mass. 603, 606 (2011) (Doe No. 10800).

Doe and his wife own a gym in Woburn. Doe offered massages to some members of his gym, although he is not certified in massage therapy. In May 2017, Doe, then twenty-five years old, sexually assaulted the victim (first victim) while performing a massage on her neck and upper back in the office of his gym. The victim had removed her top clothes and was lying face-down on a workout bench. Doe rubbed his hands on her breasts for three to five minutes, then moved on top of the victim and thrusted his erect penis against her buttocks. Doe placed her hands on his clothed, erect penis and told her that "It's OK to grab it." Although Doe wore a shirt and gym shorts when he began the massage, he was only wearing boxer briefs when the victim left the office. The victim reported the incident to the police in February 2018 after learning of similar incidents.

In September 2017, Doe sexually assaulted a second victim while performing a massage on her in the office of his gym. The victim was sitting in a chair facing backwards and was clothed. Doe stood behind the victim and pressed his erect penis against her. Doe initially moved away when the victim told him to "knock it off," then pressed his erect penis against her again. Doe sexually assaulted the victim again during another massage

2

session the next week. The victim was clothed and laying down on her stomach. Doe put his hands on her hips and his erect penis against her buttocks and between her legs. Doe sexually assaulted the second victim a third time during another massage session in which her six-year-old son was present. Again, the victim was clothed and lying face-down on a workout bench, and Doe put his hands on her hips and his erect penis between her legs. The victim told him to stop, gathered her things, and left.

In 2018, Doe sexually assaulted a third victim while performing a massage on her in the office of his gym. During the victim's first or second massage therapy session, Doe implied that he wanted to have a "threesome" with her and his then-girlfriend (now wife). During the victim's third session, Doe thrusted his hips and erect penis against her. Also in 2018, a woman (fourth complainant) reported to the Woburn police that, for months in 2016, Doe had sent her naked photographs of himself and messages proposing to have sex with her and give her a massage. The fourth complainant continuously told Doe to stop, but he did not.

In 2022, Doe pleaded guilty to four counts of indecent assault and battery on a person age fourteen or over, in violation of G. L. c. 265, § 13H. These convictions related to his assaults against the first and second victims; Doe was never

3

charged in connection with the allegations made by the third victim or the fourth complainant. He was sentenced to two years of probation. Following his plea, the board notified Doe of his obligation to register as a level two sex offender, pursuant to G. L. c. 6, § 178K (2) (b). Doe requested an administrative hearing to challenge the board's preliminary classification. Following that hearing, the examiner ordered Doe to register as a level two sex offender, concluding that "by clear and convincing evidence . . . [Doe] presents a moderate risk to re-offend and a moderate degree of danger such that a public safety interest is served by public access to his sex offender registry information and Internet dissemination." Doe sought judicial review of his classification in the Superior Court, and a judge affirmed Doe's classification.

Discussion. 1. Standard of review. "We review a judge's consideration of an agency decision de novo." Doe, Sex Offender Registry Bd. No. 523391 v. Sex Offender Registry Bd., 95 Mass. App. Ct. 85, 89 (2019) (Doe No. 523391). Still, in reviewing the board's decision, we "give due weight to the experience, technical competence, and specialized knowledge of the [board], as well as to the discretionary authority conferred upon it." G. L. c. 30A, § 14 (7); Doe, Sex Offender Registry Bd. No. 10216 v. Sex Offender Registry Bd., 447 Mass. 779, 787 (2006) (Doe No. 10216). "[A] decision of [the board] 'may only be set aside if

4

the court determines that the decision is unsupported by substantial evidence or is arbitrary or capricious, an abuse of discretion, or not in accordance with law.'"  Doe, Sex Offender Registry Bd. No. 22188 v. Sex Offender Registry Bd., 101 Mass. App. Ct. 797, 801 (2022) (Doe No. 22188), quoting Doe, Sex Offender Registry Bd. No. 6969 v. Sex Offender Registry Bd., 99 Mass. App. Ct. 533, 537 (2021).

2.  Role of the examiner.  Doe contends that the hearing examiner abused his discretion by assuming the role of an expert when he stated, with respect to the fourth complainant's report, that "[a]lthough I do not find that this incident [rises] to the level of a sexual offense, I consider it as other useful information in terms of [Doe's] deviant sexual interest in non-consenting females."  We disagree.  Absent compelling reason to believe otherwise, we understand the hearing examiner to have used the term "deviant sexual interest" in a descriptive sense rather than as a clinical diagnosis.  Although the board's regulations do not define "sexual deviance," they use the term in a general sense to refer to sexual misconduct bearing on an offender's dangerousness and recidivism risk, including both misconduct that is related to a mental abnormality and misconduct that is not.  See 803 Code Mass. Regs. § 1.33 (2025) ("The strongest predictors of sexual recidivism for all sex offenders are variables related to antisocial orientation and

5

sexual deviance"); id. § 1.33(1)(a), (4)(a), (20)(a), (36)(a)(1).[1]

Here, the hearing examiner's decision not to apply factor one (mental abnormality) indicates that he did not find that Doe's sexual deviance related to a mental abnormality. See 803 Code Mass. Regs. § 1.33(1). Nor did the hearing examiner refer to any medical diagnosis of Doe or consider any diagnostic tools or criteria that would have required the testimony of an expert in mental disorders. Cf. Doe, Sex Offender Registry Bd. No. 89230 v. Sex Offender Registry Bd., 452 Mass. 764, 776 & n.18 (2008). Instead, the hearing examiner concluded based upon the evidence and consideration of the board's regulatory factors that Doe had engaged in a pattern of inappropriately touching nonconsenting women. See Doe No. 10216, 447 Mass. at 786 ("expert testimony is unnecessary in [classification] proceedings," instead, examiners "utilize[] [regulatory] factors . . . in determining the plaintiff's final classification"). To be sure, general references to "deviant sexual interests," outside of the particular context in which that term appears in the regulations, may cause needless confusion. Here, however,

---

[1] Although the 2016 version of the board's regulations governed at the time of Doe's hearing, we refer herein to the latest version, effective April 25, 2025, for ease of reference. The provisions that we have cited have not materially changed between the two versions.

6

the examiner used that term only to describe Doe's sexual misconduct, and not to make a medical diagnosis. The examiner therefore neither assumed the role of an expert nor exceeded his authority.

3. Doe's expert evidence. Doe argues that the hearing examiner abused his discretion by failing to adopt, or at least adequately explain his disagreement with, the opinion of Doe's expert, Dr. Barbara Quinones. Specifically, Doe argues that the hearing examiner erred by "using a different process" to find that Doe's risk for reoffense was moderate, notwithstanding Dr. Quinones's opinion that he presents no cognizable risk for reoffense. In the context of a classification hearing, a hearing examiner must consider the "evaluative reports . . . empirically-based risk assessments, [and] a licensed mental health professional's testimony discussing psychological and psychiatric issues . . . as they relate to the sex offender's risk of re-offense." 803 Code Mass. Regs. § 1.33(35)(a) (2025). See Doe, Sex Offender Registry Bd. No. 23656 v. Sex Offender Registry Bd., 483 Mass. 131, 135 (2019) (Doe No. 23656). However, the "opinion of a witness testifying on behalf of a sex offender need not be accepted by the hearing examiner even where the board does not present any contrary expert testimony." Doe, Sex Offender Registry Bd. No. 68549 v. Sex Offender Registry

Bd., 470 Mass. 102, 112 (2014) (Doe No. 68549), quoting Doe No. 10800, 459 Mass. at 637.

Here, rather than simply rejecting Dr. Quinones's testimony, the hearing examiner permissibly assigned differing weight to a number of the board's regulatory factors, thus reaching a different conclusion than her. Where the hearing examiner disagreed with Dr. Quinones, he stated reasons for doing so. See Doe No. 23656, 483 Mass. at 136 (examiner "must 'explain[ ] on the record . . . reasons for rejecting portions of [an expert's] testimony'" [citation omitted]). For example, he declined to apply factor twenty-nine, a mitigating factor for sex offenders who have "liv[ed] offense-free in the community for five to ten years," measured (for those offenders who are not committed) "begin[ning] on the most recent date of conviction or adjudication of a sex offense." 803 Code Mass. Regs. § 1.33(29) (2025). Applying that standard, the hearing examiner found that the factor did not apply because Doe "ha[d] been in the community for less than five years." The hearing examiner noted but rejected Dr. Quinones's opinion that the nearly six years that Doe had resided "offense free or in the community" since the commission of the offenses should be considered a mitigating factor. In her testimony, Dr. Quinones admitted that her position was inconsistent with the board's regulations, and that "it's unclear in some of the research if

8

it's when [the offender] was first detected or when [the offender] was convicted," but nevertheless maintained that "the longer that somebody is in the community without incident, the more positive that that is." Although the hearing examiner could have explained his reasoning in more detail, he did not abuse his discretion in following the board's regulatory definition of offense-free time -- an approach supported by several cited authorities -- rather than adopting Dr. Quinones's opinion, which she acknowledged rested on inconclusive research.

We are also not persuaded by Doe's assertion that the hearing examiner "ignored" Dr. Quinones's testimony that a Static-99R "average" risk score does not necessarily equate to a "moderate" risk level according to the board's risk categories because other aggravating and mitigating factors must be considered. The hearing examiner noted that, "although the result of the STATIC-99R indicates an 'average' risk level, Dr. Quinones found that [Doe] presents no cognizable risk for reoffense." Then, "using a different process," the hearing examiner found that Doe's "risk for reoffense and degree of dangerousness is moderate." The record does not show that the hearing examiner ignored Dr. Quinones's opinion in so finding, but rather that he reached a different conclusion after applying the board's risk factors.

9

Lastly, we do not agree that the hearing examiner failed to consider the transcript of the testimony of Dr. R. Karl Hanson at a hearing that took place before the enactment of the board's 2016 regulations, which were in effect at the time of Doe's hearing.  See note 1, supra.  While it is true that the hearing examiner "must at least consider" evidence relevant to an offender's risk, "[i]t is for the hearing examiner to weigh the evidence presented."  Doe, Sex Offender Registry Bd. No. 356315 v. Sex Offender Registry Bd., 99 Mass. App. Ct. 292, 298 (2021).  Here, the hearing examiner stated that the transcript was of "dubious relevancy" because the facts and issues of the prior hearing were "different than those of the present case" and "much of what the doctor argues . . . is now considered in the research used in the [b]oard's risk factors."  We also note that Dr. Hanson's view that factor 22 (number of victims) has no predictive value, is contrary to the text of factor 22, by which the hearing examiner is bound, and which cannot be challenged in this action under G. L. c. 30A, § 14.  See Doe No. 68549, 470 Mass. at 114.  The record thus shows that, rather than failing to consider the testimony at all, the hearing examiner properly exercised his discretion in giving the testimony little weight.

4.  Reliance on hearsay.  Doe contends that the hearing examiner abused his discretion by admitting and crediting "unreliable hearsay evidence" that Doe sexually assaulted the

10

third victim and propositioned and sent naked photographs of himself to the fourth complainant. Doe argues that this hearsay evidence was not reliable because both the third victim and the fourth complainant had reason to fabricate their allegations, the allegations were not supported by convictions, and the allegations lacked detail. We discern no abuse of discretion.

The range of evidence that may be considered by hearing examiners is not limited by the same rules of evidence that apply in court proceedings; hearing examiners may exercise their discretion to admit and give probative value to evidence "if it is the kind of evidence on which reasonable persons are accustomed to rely in the conduct of serious affairs." Doe, Sex Offender Registry Bd. No. 339940 v. Sex Offender Registry Bd., 488 Mass. 15, 26 (2021) (Doe No. 339940), quoting G. L. c. 30A, § 11 (2). "[H]earsay evidence bearing indicia of reliability constitutes admissible and substantial evidence" (citation omitted). Doe No. 339940, supra. "Such indicia include 'the general plausibility and consistency of the victim's or witness's story, the circumstances under which it is related, the degree of detail, the motives of the narrator, the presence or absence of corroboration and the like.'" Id. at 26-27, quoting Doe, Sex Offender Registry Bd. No. 10304 v. Sex Offender Registry Bd., 70 Mass. App. Ct. 309, 313 (2007).

Here, it was reasonable for the hearing examiner to admit and credit the statements of the third victim and fourth complainant. See Murray's Liquors, Inc. v. Alcoholic Beverages Control Comm'n., 48 Mass. App. Ct. 100, 103 (1999) ("the [agency] functions as the finder of facts and determines the credibility and weight to be given to the evidence before it"). Their statements were rendered substantially reliable by their consistency with the known facts of Doe's other sexual misconduct. See Doe No. 10800, 459 Mass. at 638-639. The third victim's report of Doe's sexual misconduct during her massage sessions at his gym was consistent with the conduct to which Doe pleaded guilty with respect to the first and second victims. The fourth complainant reported that Doe propositioned her for sex and sent her naked photographs, all while encouraging her to let him massage her at his gym. This report showed "a common course of conduct by Doe that was logically probative." Id.

The hearing examiner was not required to credit Doe's assertion that the third victim and fourth complainant "colluded" with the second victim to fabricate their allegations. See Murphy v. Contributory Retirement Appeal Bd., 463 Mass. 333, 344 (2012) ("[A] reviewing court is not empowered to make a de novo determination of the facts, to make different credibility choices, or to draw different inferences from the facts found by the [agency]"). Doe was convicted of indecent

12

assault and battery against the second victim, and, as his argument relates to the third victim and the fourth complainant, "[t]he lack of criminal conviction does not render information contained within a police report inadmissible in an administrative proceeding." Doe No. 523391, 95 Mass. App. Ct. at 90. It is within the discretion of the hearing examiner to consider the motives of the narrator and weigh the probative value of the evidence. See Doe. No. 339940, 488 Mass. at 26-27. The hearing examiner did not abuse his discretion in doing so here.

5. Substantial evidence. Doe contends that his classification as a level two sex offender is not supported by substantial evidence. We are not persuaded. To classify an offender as a level two sex offender, a hearing examiner must determine, by clear and convincing evidence, "that the risk of reoffense is moderate and the degree of dangerousness posed to the public is such that a public safety interest is served by the public availability of registration information . . . ." G. L. c. 6, § 178K (2) (b). To uphold such a classification, a reviewing court must find that the hearing examiner's decision is supported by substantial evidence. Doe No. 22188, 101 Mass. App. Ct. at 801. "Substantial evidence is 'such evidence as a reasonable mind might accept as adequate to support a

13

conclusion.'" Doe No. 10800, 459 Mass. at 632, quoting G. L. c. 30A, § 1 (6).

"A hearing examiner has discretion . . . to consider which statutory and regulatory factors are applicable and how much weight to ascribe to each factor . . . ." Doe No. 68549, 470 Mass. at 109-110. The examiner's experience and specialized knowledge in making such determinations are entitled to weight, G. L. c. 30A, § 14 (7), and "our review does not turn on whether, faced with the same set of facts, we would have drawn the same conclusion as an [examiner] . . . , but only whether a contrary conclusion is not merely a possible but a necessary inference" (quotation and citation omitted). Doe No. 68549, supra at 110.

The hearing examiner applied four risk-elevating factors based on facts supported by the record. Doe committed multiple sexual offenses during 2017 and 2018 against members of his gym. He committed the offenses when other people were present, including a child in one instance. Doe knew the victims and was in a position of trust with them as they were members of his gym. And, since he continues to work at his gym, Doe has easy access to potential victims that fit his pattern of offense.

The hearing examiner also considered multiple risk mitigating factors applicable to Doe. The hearing examiner applied full weight to factor twenty-eight in consideration of

14

Doe's probation supervision. The full weight of factor thirty-four (stability in the community) was also applied, as he is married, lives with his mother, and continues to run his gym. The hearing examiner assigned moderate weight to factor thirty-three (home situation and support systems) based on letters of support from Doe's family and clients attesting to Doe's character and awareness of his sex offenses (although they do not believe he committed them).

After weighing these factors and considering the first victim's impact statement, the hearing examiner found that Doe "poses a moderate risk to re-offend and a moderate degree of dangerousness." The hearing examiner concluded that, based on Doe's pattern of conduct and continued "access to his preferred pool of Victims. . . . Internet and public access to his sex offender registry information is necessary to allow women who may encounter [Doe] or go to his gym to take steps to protect themselves." While Doe does not agree with that result, we conclude that the hearing examiner's determination that clear and convincing evidence supported a level two classification was supported by substantial evidence.

Additionally, Doe argues that even if no single error by the hearing examiner, standing alone, is sufficient to warrant the reversal of his classification, reversal is nonetheless

warranted due to cumulative error.  Given our conclusions on the underlying alleged errors, there was no cumulative error.

Judgment affirmed.

By the Court (Sacks,
  Hodgens & Toone, JJ.[2]),

_Paul Little_

Clerk

Entered:  March 11, 2026.

---

[2] The panelists are listed in order of seniority.